**EXHIBIT B**



CORPORATION SERVICE COMPANY®

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Rita Mennen<br>CNO Financial Group, Inc.<br>11825 N. Pennsylvania Street<br>Carmel, IN 46032 |

| | |
|---|---|
| **Entity:** | Washington National Insurance Company<br>Entity ID Number 2425789 |
| **Entity Served:** | Washington National Insurance Company |
| **Title of Action:** | Bill Jones vs. Washington National Insurance Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Carter County Circuit Court, Tennessee |
| **Case/Reference No:** | C13483 |
| **Jurisdiction Served:** | Tennessee |
| **Date Served on CSC:** | 03/10/2015 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | TN Department of Commerce and Insurance on 03/03/2015 |
| **How Served:** | Certified Mail |
| Sender Information: | Kristi Norris Johnson<br>423-518-1201 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

March 3, 2015

Washington National Insurance Company
2908 Poston Avenue, % Corp. Svc. Compar
Nashville, TN 37203
NAIC # 70319

Certified Mail
Return Receipt Requested
7012 3460 0002 8944 9927
Cashier # 18973

Re:    Bill Jones   V.   Washington National Insurance Company

       Docket # C13483

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of Commerce and Insurance was served March 3, 2015, on your behalf in connection with the above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Carter County
    900 East Elk Ave., Ste. 906
    Elizabethton, Tn  37643

Def. Copy.

Bill Jones    vs.    Washington National Insurance Company

Served On:
Washington National Insurance Company C/o CSC Company, 2908 Poston Avenue, Nashville, TN 37203

You are hereby summoned to defend a civil action filed against you in **Circuit** Court, **Carter** County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the below date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: **2.9.15**

_Johnny Blankenship_
Clerk / Deputy Clerk    TLC

Attorney for Plaintiff: **Kristi Norris Johnson**
**714 First Street Elizabethton, TN 37643**

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to _____, _____ Clerk, _____County

### CERTIFICATION (IF APPLICABLE)

I, _____, _____ Clerk of _____ County do certify this to be a true and correct copy of the original summons issued in this case.

Date: _____

Clerk / Deputy Clerk

**OFFICER'S RETURN:** Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows: _____

_____

_____

Date: _____ By: _____
Officer, Title

**RETURN ON SERVICE OF SUMMONS BY MAIL:** I hereby certify and return that on _____, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____. On _____ I received the return receipt, which had been signed by _____ on _____. The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: _____

_____
Notary Public / Deputy Clerk (Comm. Expires _____ )

_____
Signature of Plaintiff

_____
Plaintiff's Attorney (or Person Authorized to Serve Process)
**(Attach return receipt on back)**

_ADA: If you need assistance or accommodations because of a disability, please call _____, ADA Coordinator, at ( ) _____._

_Rev. 03/11_

# IN THE CIRCUIT COURT FOR CARTER COUNTY
## AT ELIZABETHTON, TENNESSEE

**BILL JONES**

       **Plaintiff**

**Vs.**

                                  Case No. C13483
                                  **JURY TRIAL DEMANDED**

**WASHINGTON NATIONAL INSURANCE COMPANY**
**A Indiana Corporation**
**Whose Address is:**
**11825 North Pennsylvania Street**
**Carmel, IN 46032-5555**

**Whose Registered Agent for Service of Process Is:**
**CSC Company**
**2908 Poston Avenue**
**Nashville, TN 37203**

               **Defendant**

---

## COMPLAINT

---

      **1.**     Plaintiff Bill Jones is a citizen and resident of Carter County, Tennessee, residing at 174 Dry Branch Road, Elizabethton, Tennessee.

      **2.**     The Defendant is a Indiana Corporation licensed to do business in the State of Tennessee as an insurance company, whose Registered Agent for Service of Process is CSC Company, 2908 Poston Avenue, Nashville, Tennessee 37203.

      **3.**     The Plaintiff has standing to sue the Defendant, since the Plaintiff was issued a Supplemental Health Insurance Policy by Washington National Insurance Company and such

policy was executed in Carter County, Tennessee.

4.  On October 2, 1996 Plaintiff bill Jones was issued a Supplemental Cancer Health Insurance Policy by Capitol American Life Insurance Company, Policy Number 2468655 (copy of policy attached hereto as Exhibit A).

5.  The Supplemental Cancer Health Insurance Policy included a Pulse Protection Series Cash Value Rider which provided if the policy holder kept the policy/certificate and rider in force, at the end of every 25 years or on the rider anniversary date following the policy holder's 75th birthday, if the policy holder's 75th birthday occurred sooner, the policy holder would receive a check for all premiums paid, minus any claims incurred.

6.  Plaintiff paid for the Supplemental Cancer Health Insurance Policy by direct payroll deduction through his employer, Carter County Board of Education.

7.  In March of 1999, Plaintiff received correspondence from Capitol American Life Insurance Company had changed names to Conseco Health Insurance Company.

8.  The Endorsement stated that the name change in no way affected the terms and conditions of the Plaintiff's Policy (copy of Endorsement attached hereto as Exhibit B).

9.  In August of 2011, Plaintiff received an endorsement from Conseco Health Insurance Company indicating that effective October 1, 2010, a member of the family of companies of CNO Financial Group (formerly Conseco), merged into another CNO Company, Washington National Insurance Company (copy of endorsement attached hereto as Exhibit C).

10.  Attached to the letter of August 2011, was a Company Merger Endorsement that was issued as a result of the merger of Conseco Health Insurance Company into Washington National Insurance Company.

11.  The Company Merger Endorsement certified that effective October 1, 2010, Washington National Insurance Company now has all liability for the policy issued by Conseco Health Insurance Company to the Plaintiff the same as the policy issued by Conseco Health Insurance Company had been issued originally by Washington National Insurance Company.

12.  During the first week of February 2012, Plaintiff was told by the Carter County Board of Education that payroll deductions for his Washington National Insurance Company Supplemental Health Insurance Premiums would no longer be automatically deducted from his payroll checks.

13.  During the first week of February 2012, Plaintiff attended a meeting at the Carter

2

County Board of Education Central Office, located in Elizabethton, Tennessee, and spoke with Peter "Kent" Nearing, an employee of Performance Matters Associates, who indicated that he represented Washington National Insurance Company.

14.     Mr. Nearing gave the Plaintiff a Policy/Certificate Information Update Form, and told the Plaintiff he could request that Washington National Insurance Company change his current payment method from payroll deduction to direct billing, if the Plaintiff filled out the Update Form.

15.     On February 8, 2012 Plaintiff completed a Policy/Certificate Information Update Form from Washington National Insurance Company.

16.     On February 9, 2012 at 9:10 A.M., Plaintiff faxed the Policy/Certificate Information Update Form to Peter Nearing, with Performance Matters Associates, a Company Representing Washington National Insurance Company (copy of Policy/Certificate Information Update Form attached hereto as Exhibit D).

17.     Plaintiff received a letter from Washington National Insurance Company dated February 14, 2012 stating that Washington National Insurance Company had been notified by the Plaintiff's Employer that payroll deductions for Plaintiff's Supplemental Health Insurance had been discontinued.

18.     The letter stated that the Plaintiff could continue his valuable protection by remitting premiums directly to Washington National Insurance Company, that Plaintiff could keep his policy in force, that the Plaintiff did not have to re-qualify for coverage and that the Plaintiff could continue paying at the current rate.

19.     The letter further stated that to take advantage of this opportunity, the Plaintiff simply needed to complete a form attached to the letter, and return the form along with a check in the amount of $78.15 to Washington National Insurance Company within fifteen days from the receipt of the letter to prevent the Plaintiff's policy from lapsing (copy of letter attached hereto as Exhibit E).

17.     On February 28, 2012 the Plaintiff mailed the form and a check in the amount of $78.15 to Washington National Insurance Company (copy of form, and check attached hereto as Collective Exhibit F).

18.     Plaintiff received a letter dated March 27, 2012 from Washington National Insurance Company dated March 27, 2012 indicating that his Cash Value Rider had cancelled

and that his benefit has been processed (copy of Letter attached hereto as Exhibit G).

19.     On April 16, 2012 Plaintiff contacted Peter"Kent" Nearing and left a voice mail.

20.     On April 16, 2012 Plaintiff contacted Washington National Insurance Company's Customer Service Department and spoke with a representative named Tamar. The representative told the Plaintiff that his Policy had lapsed, and that the due date on the Policy was December 2, 2011.

21.     The representative also told the Plaintiff that he had 90 days from December 2 to reinstate the policy, and that the 90 days had lapsed.

22.     The representative requested that the Plaintiff fax a copy of the February 28, 2012 correspondence and check and that he would receive a response after the fax was received and that it would take approximately 10 days to verify what had occurred.

23.     Plaintiff faxed a copy of the February 28, 2012 correspondence and check to Washington National Insurance on April 16, 2012.

24.     Plaintiff did not receive verification from Washington National Insurance that his fax of April 16, 2012 was received either by phone or in writing.

25.     On April 19, 2012 Plaintiff received a telephone call from Peter "Kent" Nearing requesting the Plaintiff's Social Security Number. During that telephone call Mr. Nearing indicated he was calling to check on status and assured Plaintiff that his policy would be reinstated.

26.     On March 19, 2012, Plaintiff received check # 005453129 in the amount of $21.91 from Washington National Insurance Company (copy of check attached hereto as Exhibit H).

26.     On April 17, 2012, Plaintiff received check # 005523630 in the amount of $2,636.43 from Washington National Insurance Company (copy of check attached hereto as Exhibit I).

27.     Plaintiff Bill Jones, in good faith, entered into a contract on October 2, 1996 with Capitol American Life Insurance Policy for a Supplemental Cancer Health Insurance Policy.

28.     The terms of the contract provided if the policy holder kept the policy/certificate and rider in force, at the end of every 25 years òr on the rider anniversary date following the policy holder's 75th birthday, if the policy holder's 75th birthday occurred sooner, the policy

holder would receive a check for all premiums paid, minus any claims incurred.

29.    Plaintiff paid for the Supplemental Cancer Health Insurance Policy by direct payroll deduction through his employer, Carter County Board of Education.

30.    Upon receiving notice that direct payroll deduction was no longer available from his employer, Plaintiff completed each and every requirement of Washington National Insurance Company to effect direct billing and direct payment of his insurance premiums, and to ensure that the policy would remain in effect.

31.    The Plaintiff paid all insurance premiums in a timely fashion, and otherwise complied with all obligations under the insurance contact.

32.    The Plaintiff obtained the subject policy of insurance through Capitol American Life Insurance,  based on the representations of the Defendant and its agents in that if the policy holder kept the policy/certificate and rider in force, at the end of every 25 years or on the rider anniversary date following the policy holder's 75th birthday, if the policy holder's 75th birthday occurred sooner, the policy holder would receive a check for all premiums paid, minus any claims incurred.

33.    Plaintiff  he relied upon said representations in obtaining the insurance policy, and that as the result of the misrepresentations of the Defendant, Plaintiff was not paid in accordance with the terms of the contract as represented, and consequently, the Plaintiff has been damaged.

34.    Despite knowing that no evidence existed to prove the Plaintiff had not complied with the terms of the policy, the Defendant intentionally, unilaterally and willfully cancelled  the Plaintiff's policy effective December 2, 2011, thereby breaching the Contract.

35.    As a result of the Defendant's  willful and intentional breach of the insurance contract, Plaintiff suffered significant financial damages, including insurance supplemental cancer health insurance coverage and the complete loss of premiums paid to date.

36.    Plaintiff avers that the Defendant did not have a good faith basis for cancelling the insurance policy pursuant to TCA 56-7-105 (a)

37.    Plaintiffs aver that the willful, knowing, unfair and/or deceptive actions of the Defendant as set forth herein constitute unfair and deceptive trade practice affecting commerce, in violation of the Tennessee Consumer Protection Act codified at T.C.A Section 47-18-101, et. seq.

38.    Plaintiff avers that as a result of the Defendant's intentional, reckless and/or

5

malicious acts as set forth herein, Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff prays:

1. That court find that the Defendant, Washington National Life Insurance, knowingly, intentionally, and with bad faith, breached the subject insurance policy with the Plaintiff.

2. That the Plaintiff be awarded compensatory damages in an amount not to exceed twenty five thousand dollars ($25,000.00), and punitive damages not to exceed two hundred and fifty thousand dollars ($250,000.00).

3. That the Court find the Defendant failed in good faith to reinstate the subject insurance policy without penalty to the Plaintiff, and in this regard, award Plaintiff an additional sum not exceeding twenty-five percent (25%) of the liability for the Plaintiff's loss, pursuant to T.C.A. Section 56-7-105 (a).

4. That the Court find that the Defendant violated the Tennessee Consumer Protection Act and, in this regard, award Plaintiff treble damages and all costs and expenses pursuant to the Act.

5. That the Plaintiff be awarded costs, including discretionary costs, and attorney's fees for this action.

6. For such other, further and general relief to which the Plaintiff may be entitled, including pre-judgment interest.

7. For a jury to try the issues in this cause.

6

RESPECTFULLY SUBMITTED,

_Bill Jones_

**BILL JONES**

_Kristi Norris Johnson_

**KRISTI NORRIS JOHNSON, BPR #22082**
714 First Street
Elizabethton, TN 37643
(423) 518-1201  Telephone
(423) 518-1203  Facsimile
Kristi@rrnlawfirm.com

STATE OF TENN. - COUNTY OF CARTER
I, JOHNNY BLANKENSHIP, CLERK OF THE CIRCUIT COURT OF SAID COUNTY
DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND PERFECT COPY OF THE
_Complaint w/ attachments_
AS SAME APPEARS OF RECORDS IN MY OFFICE. WITNESS MY
HAND AND OFFICIAL SEAL, ELIZABETHTON, TENN.  THIS 23rd
DAY OF _February_ 20 15
_Johnny Blankenship_
CIRCUIT COURT CLERK

7

STATE OF TENNESSEE

COUNTY OF CARTER

BILL JONES, Plaintiff in the foregoing Complaint, makes oath in due form of law that the facts therein stated are true to the best of his knowledge and belief; that his Complaint is not made out of levity or collusion with the Petitioner, but in sincerity and truth for the causes mentioned in the Complaint.

_Bill Jones_
BILL JONES

Sworn to and subscribed before me this the ___/___ day of _____, 2014.

_____
NOTARY PUBLIC

My Commission Expires:

_9/2/2016_



# CAPITOL AMERICAN
### Group of Companies

**David H. Gunning**
President

October 04, 1996

BILL R JONES
RT 5 BOX 850
ELIZABETHTON , TN   37643

Account Number:   1 2468655      51358

Dear Insured:

Thank you for choosing Capitol American!

Enclosed is the insurance plan for which you recently applied. Please take a few minutes to read the enclosed materials, and if you have any questions, call our Customer Service Department. Be sure to file these documents with your other important papers for future reference.

We think you have made a very wise decision in choosing our Company and would like to give you a few Capitol American facts:

- Capitol American has paid over $270 million in benefits to our insureds in the last ten years.

- Capitol American plays an important role in your total health insurance coverage, because benefits are paid directly to you (unless otherwise required) to use as you wish. And, these benefits are paid regardless of other insurance you may have.

- Capitol American has never raised a premium rate on an existing plan. Few companies can make that claim.

- Capitol American's investment strategy is one of the safest in the Life and Health Insurance Industry. The majority of the Company's invested assets are U.S. Government Bonds.

Your plan includes one of our valuable money-back riders. Keeping your plan and rider in force means insurance protection if you need it and your money back if you don't.

At Capitol American we are committed to being the best insurance company in America. We believe that we provide protection of outstanding value and service of the highest quality.

Thank you again for putting your trust in us.

Sincerely,

*David H. Gunning*

ST(493)$

1001 Lakeside Avenue • Cleveland, Ohio 44114-1195 • 216-696-4800

# CAPITOL AMERICAN'S

# CUSTOMER SERVICE DEPARTMENT:

## Toll Free 1-800-541-1225

With Capitol American you not only receive valuable insurance protection you also get the very best in customer service.

Please call us whenever you:

- need a claim form;
- change your address;
- would like to add or remove family members from your coverage;
- change your name; or,
- would like to change your premium payment plan.

We are here to serve you!

# CAPITOL AMERICAN GROUP OF COMPANIES

### Executive Office: 1001 Lakeside Avenue
### Cleveland, Ohio 44114-1195
### (216) 696-6400

BILL R JONES
RT 5 BOX 850
ELIZABETHTON , TN   37643

Thank you for choosing us!

We are committed to providing our customers with the best service possible. To ensure that all of our records are accurate and complete, please take a moment to review the personal information we have on file.

| Name<br>BILL R JONES | | |
|---|---|---|
| Sex<br>MALE | Date of Birth<br>█████ | Social Security Number |
| Spouse's Name | Spouse's Sex | Spouse's Date of Birth |
| Address<br>RT 5 BOX 850 | City<br>ELIZABETHTON | State<br>TN |
| Zip Code<br>37643 | Phone Number<br>(423) 474-2386 | Frequency of Payment<br>10(MONTHLY) |

If changes are necessary, please fold and return this form with the changes indicated in the spaces provided below the dotted lines. Thank you, we look forward to being of service to you.

Account Number:   1 2468655

00878

**CAPITOL AMERICAN GROUP OF COMPANIES**
**DEPARTMENT NB1**
**1001 LAKESIDE AVENUE**
**CLEVELAND, OHIO 44114-1195**

**Attention: Customer Service**

# CAPITOL AMERICAN GROUP OF COMPANIES
**Executive Office: 1001 Lakeside Avenue**
**Cleveland, Ohio 44114-1195**
**(216) 696-6400**

BILL R JONES
RT 5 BOX 850
ELIZABETHTON , TN   37643

Thank you for choosing us!

We are committed to providing our customers with the best service possible. To ensure that all of our records are accurate and complete, please take a moment to review the personal information we have on file.

| Name |  |  |
| --- | --- | --- |
| BILL R JONES |  |  |

| Sex | Date of Birth | Social Security Number |
| --- | --- | --- |
| MALE |  |  |

| Spouse's Name | Spouse's Sex | Spouse's Date of Birth |
| --- | --- | --- |
|  |  |  |

| Address | City | State |
| --- | --- | --- |
| RT 5 BOX 850 | ELIZABETHTON | TN |

| Zip Code | Phone Number | Frequency of Payment |
| --- | --- | --- |
| 37643 | (423) 474-2386 | 10(MONTHLY) |

If changes are necessary, please fold and return this form with the changes indicated in the spaces provided below the dotted lines. Thank you, we look forward to being of service to you.

Account Number:   1 2468655

00878

# CAPITOL AMERICAN LIFE INSURANCE COMPANY

## EXPRESS PAYMENT BENEFIT
## PROCESSING FORM

As described in your policy, the Express Payment Benefit is payable when you are diagnosed for the first time as having any **internal** cancer.

To receive prompt processing of the Express Payment Benefit, please complete Part A of this form, have the physician complete Part B, and then send it, **along with a copy of your Pathology Report showing the diagnosis of your internal cancer**, to:

**Capitol American Life Insurance Company**
**P.O. Box 94953**
**Cleveland, Ohio 44101–4953**
**Attention: Claims Department**

For additional benefits, please submit a completed claim form along with copies of your medical bills.

**NOTICE**: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties.

FORM ZF000/EP1ST-A (4/93)

---

**Part A:**

Policyowner's/Certificateholder's Name: _____ BILL R JONES _____

Policy/Certificate Number: ____ 2468655 _____

Patient's Name: _____ Patient's Date of Birth: _____

Patient's Statement:

I first consulted a physician for this illness on (month/day/year) ____/____/____; and, was never treated for or diagnosed as having any internal cancer before the date indicated above. I hereby authorize my physician or hospital to give full details of my medical condition and history to Capitol American Life Insurance Company.

Signature of Patient or Guardian: _____ Date: _____

---

**Part B:**

Physician's Name:_____ Phone Number: (___)_____

Address: _____

Physician's Statement:

I have reviewed the medical history of the patient named above. This person:
• has been my patient since (month/day/year) ____/____/____;
• was first diagnosed as having internal cancer on ____/____/____; /and,
• was never treated for or diagnosed as having any internal cancer before the date of diagnosis, above.

Signature of Physician: _____ Date: _____

FORM ZF000/EP1ST-A (4/93)

# CAPITOL AMERICAN LIFE INSURANCE COMPANY

## EXPRESS PAYMENT BENEFIT
## PROCESSING FORM

As described in your policy, the Express Payment Benefit is payable when you are diagnosed for the first time as having any **internal** cancer.

To receive prompt processing of the Express Payment Benefit, please complete Part A of this form, have the physician complete Part B, and then send it, **along with a copy of your Pathology Report showing the diagnosis of your internal cancer**, to:

**Capitol American Life Insurance Company**
**P.O. Box 94953**
**Cleveland, Ohio 44101-4953**
**Attention: Claims Department**

For additional benefits, please submit a completed claim form along with copies of your medical bills.

**NOTICE:** Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties.

FORM ZF000/EP1ST-A (4/93)

**Part A:**

Policyowner's/Certificateholder's Name: _____BILL R JONES_____

Policy/Certificate Number: ____2468655_____

Patient's Name: _____ Patient's Date of Birth: _____

Patient's Statement:

I first consulted a physician for this illness on (month/day/year) ____/____/____; and, was never treated for or diagnosed as having any internal cancer before the date indicated above. I hereby authorize my physician or hospital to give full details of my medical condition and history to Capitol American Life Insurance Company.

Signature of Patient or Guardian: _____ Date: _____

**Part B:**

Physician's Name:_____ Phone Number: (___)_____

Address: _____

Physician's Statement:

I have reviewed the medical history of the patient named above. This person:
• has been my patient since (month/day/year) ____/____/____;
• was first diagnosed as having internal cancer on ____/____/____; /and,
• was never treated for or diagnosed as having any internal cancer before the date of diagnosis, above.

Signature of Physician: _____ Date: _____

FORM ZF000/EP1ST-A (4/93)

# CAPITOL AMERICAN LIFE INSURANCE COMPANY

## POLICY SCHEDULE

### DO NOT DETACH FROM POLICY AND OR RIDER(S)

SET 1 OF 2

October 04, 1996

POLICYOWNER
BILL R JONES
RT 5 BOX 850
ELIZABETHTON , TN   37643

51358      03

| POLICY ACCOUNT NUMBER | POLICY EFFECTIVE DATE | MODE OF PAYMENT | MODAL PREMIUM | ANNUAL PAYMENT |
|---|---|---|---|---|
| 1  2468655 | 10/02/96 | 10(MONTHLY) | $24.06 | $240.60 |

| COVERAGE | EFFECTIVE | DESCRIPTION OF COVERAGE | | PAYMENT |
|---|---|---|---|---|
| CH50I4 | 10/02/96 | LIFECHOICES SERIES (CHOICE B - OPTION 3) | INDIVIDUAL CANCER INSURANCE | $15.54 |
| CH5CI4 | 10/02/96 | CASH VALUE RIDER | | $8.52 |

EXECUTIVE OFFICE USE
ST(493)$
CH000/PS1TN-A
CV-CH-TN-A

NB1
CH0B3/IS1TN-A25
0000634919

ZF000/EP1ST-A
CH00B/SS1ST-A
IDCARD

TN                            00878
SCHEDULE
ST000/ES9TN-AGA
MAIL-DESTINATION

FORM SCHEDULE

# CAPITOL AMERICAN LIFE INSURANCE COMPANY

Home Office: Phoenix, Arizona
**Executive Office: 1001 Lakeside Avenue**
**Cleveland, Ohio 44114-1195**
**(216) 696-6400**

## CANCER POLICY

(INSURANCE FOR OTHER SICKNESS MAY BE INCLUDED IN A SEPARATE RIDER
REQUIRING ADDITIONAL PREMIUM. IF SUCH INSURANCE IS INCLUDED,
IT WILL BE INDICATED IN THE ATTACHED POLICY SCHEDULE.)

**THIS IS A LIMITED POLICY - PLEASE READ CAREFULLY.
THIS POLICY IS GUARANTEED RENEWABLE FOR LIFE.**

## POLICY INDEX

| | |
|---|---|
| Policy Schedule | Attached |
| Definitions | Section 1 |
| Eligibility for Benefits | Section 2 |
| Benefits | Section 3 |
| Limitations and Exclusions | Section 4 |
| Waiver of Premium Provision | Section 5 |
| General Provisions | Section 6 |
| Claim Provisions | Section 7 |
| Benefit Schedule | Section 8 |
| Surgical and Anesthesia Schedule | Section 9 |
| Riders, Endorsements, Amendments, if any | Attached |
| Application | Attached |

This policy is a legal contract between the Policyowner and Capitol American Life Insurance Company. We agree to insure you against loss due to cancer based on the application and in return for premium payments. IT IS IMPORTANT that you read the entire policy, including the application, and write to us within 10 days if any information shown in the application is incorrect or incomplete.

**TEN-DAY OPTION TO SURRENDER**

If for any reason the Policyowner is not satisfied with this policy, it may be returned to an authorized agent of the Company or to our Executive Office within 10 days after it is received for a complete refund of premium and cancellation of the policy.

**GUARANTEED RENEWABILITY PRIVILEGE – PREMIUM CHANGE**

This policy is continuously renewed during the Policyowner's lifetime by the payment of premiums when due. We reserve the right to change premium rates upon written notice to your last known address at least 60 days before the change is to become effective. Such changes may only be made for all policies of this form number and premium classification issued in the same state. Premium classification is determined by issue age, type and level of benefits and payment method. You cannot be singled out for a premium rate change.

This policy is executed on behalf of CAPITOL AMERICAN LIFE INSURANCE COMPANY by its President at its Executive Office in Cleveland, Ohio.

David H. Gunning
President

Countersigned_____
Licensed Resident Agent (when required by law).

**THIS POLICY DOES NOT PAY BENEFITS FOR CANCER DIAGNOSED PRIOR TO 30 DAYS AFTER YOU BECOME INSURED UNDER THIS POLICY, SUBJECT TO THE TIME LIMIT ON CERTAIN DEFENSES PROVISION, UNLESS WE HAVE SPECIFICALLY WAIVED OR AMENDED THIS REQUIREMENT IN AN ATTACHED AMENDMENT OR RIDER.**

FORM CH000/PS1TN-A

# SECTION 1: DEFINITIONS

When the terms below are used in this policy, the following definitions apply:

**WE, US, OUR, COMPANY**  Means Capitol American Life Insurance Company.

**POLICYOWNER**  Means the person named as the Policyowner in the Policy Schedule.

**YOU, YOUR, YOURSELF, INSURED PERSON**

Means the Policyowner.

Means, if this is a single parent policy, the Policyowner and the Policyowner's children.

Means, if this is a family policy, the Policyowner and the Policyowner's spouse and children.

On the Effective Date of this policy, "Spouse" means the insurable person named as spouse on the application and married to the Policyowner as of that date. The Policyowner can terminate the spouse's insurance by notifying us in writing. If the Policyowner remarries, the Policyowner can change the person designated as spouse by following the procedures below for adding a spouse. Only one person can be insured as spouse at any given time.

On the Effective Date of this policy, "Children" means the Policyowner's natural children, step-children, legally adopted children or children placed with the Policyowner for adoption, who are:
- insurable and named on the application;
- unmarried; and,
- chiefly dependent on the Policyowner or spouse for support; and are either:
  - younger than 24, or younger than 26 if they are full-time students in a licensed or accredited school; or,
  - mentally or physically handicapped, became so handicapped prior to age 24, and cannot support themselves because of such handicap.

The definition of "full-time student" is based on the criteria for "full-time student" in the school where the student is enrolled.

For handicapped children, you must, where possible, provide us proof of the child's incapacity and dependency no more than 31 days after the child reaches age 24. Thereafter, such proof must be provided at our request, but not more frequently than annually.

A child's insurance will terminate on the date on which that child ceases to meet the above conditions. Our acceptance of premium after this date is considered as premium only for the remaining persons who qualify under this policy. It is the Policyowner's responsibility to notify us when a child ceases to meet the above conditions.

For individual, single parent and family policies, the Policyowner may be able to add a spouse or child to this policy. To do so we must receive: (1) an application for the person; (2) evidence satisfactory to us that the person is eligible and insurable; and, (3) payment of any additional premium. If the application is approved, we will notify the Policyowner of the date the added person's insurance becomes effective.

The Policyowner's newborn children are insured from the moment of live birth. If this is a family or single parent policy, no notice or additional premium is required. If this is an individual policy, the Policyowner's children born after the Effective Date of this policy will be insured from the moment of live birth for a period of 31 days. The Policyowner may continue the newborn child's insurance if, within that 31 day period, the Policyowner notifies us of the child's birth and pays the appropriate additional premium for a single parent or family policy.

For newborns, we will pay benefits for the necessary care or treatment of medically diagnosed congenital defects, birth abnormalities, or prematurity, if any of these are caused by a disease or condition for which benefits are payable under this policy. Benefits are not payable for normal, newborn child care.

**CANCER**  Means a disease which expresses itself as:
- a malignant tumor characterized by the uncontrolled growth and spread of malignant cells;
- the invasion of body tissues by such malignant cells;
- leukemia; or,
- Hodgkin's disease.

Cancer does not include premalignant conditions, conditions with malignant potential, or pre-leukemic conditions.

**DEFINITIVE CANCER TREATMENT**    Means proven medical techniques which destroy cancer or slow or stop the spread of cancer. We consider a technique to be proven which at the time of treatment:
- is fully or investigationally approved for the treatment of cancer by the U.S. Food and Drug Administration; or,
- is a generally accepted medical or surgical technique as determined by an oncologist chosen by the Company.

The American Cancer Society maintains information on some unproven methods of cancer treatment.

**DISABLED**    Means that you are:
- unable, due to cancer, to work at any job for which you are qualified by reason of education, training, or experience; and,
- under the care of a physician for the treatment of cancer.

If you do not have a job when disability begins, you will be considered disabled only as long as your physician indicates you are unable to work due to cancer.

**DOCTOR OR PHYSICIAN**    Means a person other than you or your spouse, parent, child, grandparent, grandchild, brother, sister, aunt, uncle, nephew or niece who:
- is licensed by the state to practice a healing art;
- performs services which are allowed by that license; and,
- performs services for which benefits are provided by this policy.

**HOSPICE**    Means an organization which:
- is licensed by a government agency;
- provides palliative and supportive care to terminally ill persons and their families;
- provides this care in the home or on an outpatient or short-term inpatient basis; and,
- is classified as a hospice.

A hospice is not:
- a hospital;
- a skilled nursing facility;
- a nursing home;
- an extended care facility;
- a convalescent home;
- a rest home or a home for the aged;
- a sanatorium;
- a rehabilitation center;
- a place for the treatment of substance abuse; or,
- a facility for the care and treatment of mental disease or mental disorders.

**HOSPITAL**    Means a medical facility which:
- is legally licensed and operated as an acute-care hospital;
- provides overnight care of injured and sick people;
- is supervised by a doctor;
- provides 24-hour-a-day nursing services supervised by or under a registered nurse;
- provides on-site or prearranged use of x-ray equipment, laboratory and surgical facilities; and,
- maintains permanent medical history records.

A hospital is not a bed, unit or a facility that functions as:
- a hospice;
- a skilled nursing facility;
- a nursing home;
- an extended care facility;
- a convalescent home;
- a rest home or a home for the aged;
- a sanatorium;
- a rehabilitation center;
- a place for the treatment of substance abuse; or,
- a facility for the care and treatment of mental disease or mental disorders.

**PATHOLOGIST**    Means a doctor licensed to practice medicine and certified by the American Board of Pathology or the American Osteopathic College of Pathologists to practice pathological anatomy.

**SKILLED NURSING FACILITY**    Means a medical facility which:
- is legally licensed and operated as a skilled nursing facility;
- provides skilled nursing care in addition to room and board accommodations;
- is supervised by a doctor;
- provides 24-hour-a-day nursing services supervised by or under a registered

THIS ILLUSTRATED COPY — READ CAREFULLY

nurse; and,
- maintains permanent medical history records.

A skilled nursing facility is not a bed, unit or facility that functions as:
- a hospice;
- a rest home or a home for the aged;
- a sanatorium;
- a place for the treatment of substance abuse;
- a facility used for the care and treatment of mental disease or mental disorders; or,
- a place for custodial or educational care.

**PERIOD OF CONFINEMENT**   Means a period which begins on or after the Effective Date, and during which you are confined as an inpatient to a hospital, U.S. Government hospital, or skilled nursing facility. If you are reconfined within 30 days, then the later period will be considered a continuation of the prior period of confinement. If you are reconfined more than 30 days later, we will treat the later confinement as a new confinement.

**U.S. GOVERNMENT HOSPITAL**   Means a hospital which:
- is operated by or for the United States Government; and,
- does not charge you prevailing market rates for its room, board and medical services. "Prevailing market rates" means fees for services that equal, exceed or are reasonably related to all costs incurred by a hospital in providing such services.

**LOSS**   Means a specified event for which we pay benefits under this policy.

**ACTUAL CHARGES**   Means the amount you are charged but not more than an amount, as determined by us, equal to the usual and prevailing charges being made by other providers for like products or services in the general geographic area where you are charged.

**PREMIUM**   Means the amount of money you are required to pay us in return for the insurance provided by this policy.

# SECTION 2: ELIGIBILITY FOR BENEFITS

**DIAGNOSIS**   For cancer benefits under this policy, cancer must be diagnosed in one of the following ways:

Pathological Diagnosis

A pathological diagnosis of cancer is made from the results of a microscopic study of fixed tissue or blood samples. This type of diagnosis must be made by a pathologist certified by the American Board of Pathology or the American Osteopathic College of Pathologists. A pathological diagnosis of cancer can be made before or after death.

Clinical Diagnosis

A clinical diagnosis of cancer is based on the study of symptoms. We accept a clinical diagnosis only when a pathological diagnosis is detrimental to your health, when there is medical evidence to support the diagnosis, and when a doctor is treating you for cancer.

Other Diagnosis

We accept the pathological interpretation of the histology of skin lesions from dermatologists certified by the American Board of Dermapathology. In the case of lung cancer, we accept a cytology report in lieu of a pathology report.

**ELIGIBILITY**   You will be eligible for cancer benefits under this policy if:
- you have never had any cancer diagnosed prior to 30 days after you become insured under this policy unless we have specifically waived or amended this requirement in an attached amendment or rider;
- your cancer is first diagnosed while you are insured by this policy;
- you incur a loss due to your cancer while you are insured by this policy; and,
- the loss is not excluded by name or specific description in this policy.

The date of diagnosis is the earlier of the date of clinical diagnosis or the date the specimen used to diagnose cancer is taken.

We will not pay benefits for hospitalizations which begin prior to the date you become insured under this policy.

- If cancer is first diagnosed while you are hospitalized, you will be eligible for benefits retroactively to the date you were admitted to the hospital, but not for more than 30 days prior to the date of diagnosis. EXCEPTION: If skin cancer is diagnosed while you are hospitalized, you will be eligible for benefits only for the day(s) you actually received treatment for skin cancer.

If cancer is not diagnosed until after you die, you will be eligible for benefits beginning on the date of admission for a period of continuous hospitalization ending in your death, but not for more than 30 days prior to the date of your death.

## SECTION 3: BENEFITS

### OUR PROMISE TO PAY

Subject to the terms, conditions, limitations and exclusions of this policy, we will pay the following benefits. Benefit amounts and some limitations are shown in the Benefit Schedule and Surgical and Anesthesia Schedule.

### EXPRESS PAYMENT BENEFIT

We will pay the amount shown in the Benefit Schedule when you are diagnosed for the first time as having any internal cancer. We will pay this benefit even when cancer is not diagnosed until after death. We will pay this benefit only once for any insured person. We will not pay this benefit for skin cancer.

### HOSPITAL CONFINEMENT BENEFIT

We will pay this benefit for each day you are confined as an inpatient to a hospital, other than a U. S. Government hospital, as the direct result of cancer.

This benefit will be calculated based on the number of days the hospital charges you for room and board. A "day" means a 24-hour period. Separate confinements within 30 days of each other are considered the same period of confinement.

The benefit per day of confinement is the sum of two amounts:
- the initial amount shown in the Benefit Schedule; and,
- the inflation fighter amount shown in the Benefit Schedule multiplied by the number of complete years (maximum of five) you have been insured by this policy as of the first day of your period of confinement.

### EXTENDED BENEFITS

We will pay this benefit for the period beginning with the 90th day of your continuous uninterrupted inpatient hospital confinement as the direct result of cancer and ending with your discharge. We will pay the actual charges made to you by the hospital for medical care and treatment of cancer for each day during this period, up to the daily limit shown in the Benefit Schedule.

During this period, we will pay this benefit in lieu of paying all other benefits. After this confinement, you will be eligible for the other benefits provided by this policy, subject to the limitations stated.

### U.S. GOVERNMENT HOSPITAL CONFINEMENT BENEFIT

We will pay this benefit for each day you are confined as an inpatient to a U.S. Government hospital as the direct result of cancer.

This benefit will be calculated based on the number of days you are confined. A "day" means a 24-hour period. Separate confinements within 30 days of each other are considered the same period of confinement.

The benefit per day of confinement is the sum of two amounts:
- the initial amount shown in the Benefit Schedule; and,
- the inflation fighter amount shown in the Benefit Schedule multiplied by the number of complete years (maximum of five) you have been insured by this policy as of the first day of your period of confinement.

We will pay this benefit while you are so confined in lieu of all other benefits with the exception of the Express Payment, Transportation, Family Member Transportation and Family Member Lodging benefits.

### DRUGS AND DIAGNOSTIC TESTING BENEFIT

We will pay this benefit for drugs administered to you while you are confined as an inpatient in a hospital as the direct result of cancer. Such drugs, at the time of administration, must be approved by the U.S. Food and Drug Administration. This benefit also includes diagnostic and laboratory tests and x-rays necessary for the diagnosis and treatment of cancer which are administered while you are an inpatient in a hospital.

We will pay the actual charges made by the hospital up to the daily limit shown in the Benefit Schedule for each day you receive drugs or diagnostic tests while confined as an inpatient, up to the number of days for which you receive benefits under the Hospital Confinement Benefit. This benefit is not payable for drugs which are paid under the Radiation/Chemotherapy Benefit.

### MAMMOGRAPHY SCREENING BENEFIT

We will pay the amount shown in the benefit schedule for an insured female's mammography screening performed on dedicated equipment for diagnostic purposes on referral by a physician not more often than:

If cancer is not diagnosed until after you die, you will be eligible for benefits beginning on the date of admission for a period of continuous hospitalization ending in your death, but not for more than 30 days prior to the date of your death.

## SECTION 3: BENEFITS

**OUR PROMISE TO PAY**

Subject to the terms, conditions, limitations and exclusions of this policy, we will pay the following benefits. Benefit amounts and some limitations are shown in the Benefit Schedule and Surgical and Anesthesia Schedule.

**EXPRESS PAYMENT BENEFIT**

We will pay the amount shown in the Benefit Schedule when you are diagnosed for the first time as having any internal cancer. We will pay this benefit even when cancer is not diagnosed until after death. We will pay this benefit only once for any insured person. We will not pay this benefit for skin cancer.

**HOSPITAL CONFINEMENT BENEFIT**

We will pay this benefit for each day you are confined as an inpatient to a hospital, other than a U. S. Government hospital, as the direct result of cancer.

This benefit will be calculated based on the number of days the hospital charges you for room and board. A "day" means a 24-hour period. Separate confinements within 30 days of each other are considered the same period of confinement.

The benefit per day of confinement is the sum of two amounts:
- the initial amount shown in the Benefit Schedule; and,
- the inflation fighter amount shown in the Benefit Schedule multiplied by the number of complete years (maximum of five) you have been insured by this policy as of the first day of your period of confinement.

**EXTENDED BENEFITS**

We will pay this benefit for the period beginning with the 90th day of your continuous uninterrupted inpatient hospital confinement as the direct result of cancer and ending with your discharge. We will pay the actual charges made to you by the hospital for medical care and treatment of cancer for each day during this period, up to the daily limit shown in the Benefit Schedule.

During this period, we will pay this benefit in lieu of paying all other benefits. After this confinement, you will be eligible for the other benefits provided by this policy, subject to the limitations stated.

**U.S. GOVERNMENT HOSPITAL CONFINEMENT BENEFIT**

We will pay this benefit for each day you are confined as an inpatient to a U.S. Government hospital as the direct result of cancer.

This benefit will be calculated based on the number of days you are confined. A "day" means a 24-hour period. Separate confinements within 30 days of each other are considered the same period of confinement.

The benefit per day of confinement is the sum of two amounts:
- the initial amount shown in the Benefit Schedule; and,
- the inflation fighter amount shown in the Benefit Schedule multiplied by the number of complete years (maximum of five) you have been insured by this policy as of the first day of your period of confinement.

We will pay this benefit while you are so confined in lieu of all other benefits with the exception of the Express Payment, Transportation, Family Member Transportation and Family Member Lodging benefits.

**DRUGS AND DIAGNOSTIC TESTING BENEFIT**

We will pay this benefit for drugs administered to you while you are confined as an inpatient in a hospital as the direct result of cancer. Such drugs, at the time of administration, must be approved by the U.S. Food and Drug Administration. This benefit also includes diagnostic and laboratory tests and x-rays necessary for the diagnosis and treatment of cancer which are administered while you are an inpatient in a hospital.

We will pay the actual charges made by the hospital up to the daily limit shown in the Benefit Schedule for each day you receive drugs or diagnostic tests while confined as an inpatient, up to the number of days for which you receive benefits under the Hospital Confinement Benefit. This benefit is not payable for drugs which are paid under the Radiation/Chemotherapy Benefit.

**MAMMOGRAPHY SCREENING BENEFIT**

We will pay the amount shown in the benefit schedule for an insured female's mammography screening performed on dedicated equipment for diagnostic purposes on referral by a physician not more often than:

pay for diagnostic or follow-up surgery which does not definitively diagnose or treat cancer.

We will pay the amount shown in the Surgical and Anesthesia Schedule for the surgical procedure performed. For reconstructive breast surgery, we will pay actual charges up to the Surgical Procedure Benefit we paid for the mastectomy. We will pay the amount shown in the Surgical and Anesthesia Schedule for surgical biopsies resulting in a pathological diagnosis of cancer.

If you have more than one surgical procedure performed at the same time through the same incision, we will pay only for the one surgical procedure performed for which the largest benefit amount in the Surgical and Anesthesia Schedule is payable.

If you have a surgical procedure performed which is not shown in the Surgical and Anesthesia Schedule, we will pay a benefit amount based on the difficulty of the procedure as compared to the difficulty of the procedures shown. Regardless of the difficulty of the procedure, we will pay no less than the smallest and no more than the largest amount shown in the Surgical and Anesthesia Schedule for any surgical procedure.

**SECOND AND THIRD SURGICAL OPINION BENEFIT**

We will pay this benefit if surgery is recommended due to the diagnosis of cancer and you choose to obtain the opinion of a second physician. If the second opinion fails to confirm the need for the recommended surgery, we will pay for a third physician's opinion. An insured is not required to obtain a second or third opinion in order to receive the surgical or other benefits under this policy. Second or third opinions must be rendered before surgery is performed. The physicians rendering such opinions must not be in practice with or otherwise affiliated with each other.

We will pay actual charges for such opinions up to the amount shown in the Benefit Schedule. This benefit is not payable for second or third opinions related to skin cancer treatment.

**ANESTHESIA BENEFIT**

We will pay this benefit if you receive anesthesia during cancer surgery for which a Surgical Procedure Benefit is payable.

We will pay the amount shown in the Surgical and Anesthesia Schedule for the surgical procedure performed during which anesthesia was administered. We will pay the amount shown in the Surgical and Anesthesia Schedule for anesthesia administered during a surgical biopsy resulting in a pathological diagnosis of cancer.

If you have more than one cancer surgical procedure performed at the same time, we will pay an Anesthesia Benefit only for the one surgical procedure performed for which the largest benefit amount is payable. If anesthesia is administered during a cancer surgical procedure that is not listed in the Surgical and Anesthesia Schedule, we will pay an Anesthesia Benefit amount equal to 25% of the amount we pay for such surgery. We will pay no less than the smallest and no more than the largest Anesthesia Benefit amount shown in the Surgical and Anesthesia Schedule.

**BLOOD AND PLASMA BENEFIT**

We will pay the amount shown in the Benefit Schedule for each unit of whole blood, plasma, red cells, packed cells or platelets you receive for definitive cancer treatment.

**SKILLED NURSING FACILITY BENEFIT**

We will pay this benefit if you are confined due to cancer, by doctor's order, to a skilled nursing facility within 14 days after you are discharged from a hospital where you were confined as a direct result of cancer.

We will pay actual charges up to the amount shown in the Benefit Schedule for each day you are so confined. We will pay this benefit for no more than the number of days for which we paid the Hospital Confinement or U.S. Government Hospital Confinement benefit for the period of hospital confinement which immediately preceded the skilled nursing facility confinement.

**HOME CARE AND RECOVERY BENEFIT**

We will pay this benefit after your discharge from a hospital, other than a U.S. Government hospital. We will pay the amount shown in the Benefit Schedule for the same number of days you receive benefits under the Hospital Confinement Benefit. This benefit is payable after each period of hospital confinement. This benefit is not payable for confinements which end in death.

**HOSPICE BENEFIT**

We will pay this benefit for each day you receive care provided by or through a hospice as a direct result of your cancer. You must be diagnosed as terminally ill, no longer be receiving definitive cancer treatment and be expected to live six months or less.

We will pay the amount shown in the Benefit Schedule for each day you:
  • receive hospice services at your home;

- use the services of a hospital or a U.S. Government hospital on an outpatient basis under the direction of a hospice; or,
- visit or are confined to a hospice for treatment or services.

We will not pay this benefit for any day you are confined to a hospital, a U.S. Government hospital, or a skilled nursing facility.

## TRANSPORTATION BENEFIT

We will pay this benefit if you must travel within the continental U.S. more than 100 miles one-way from your home either:
- to receive covered cancer treatments prescribed by your local physician that are not available within 100 miles one-way from your home; or,
- for consultation about your cancer at a Comprehensive or Clinical Cancer Center (as recognized by the National Cancer Institute).

"Covered cancer treatment" means definitive cancer treatment for which benefits are payable under this policy.

We will pay actual charges up to the amount shown in the Benefit Schedule for your coach class plane, train or bus fare on a regularly scheduled route. We will not pay the cost to charter a plane, train or bus. If you choose instead to travel by car, we will pay the amount shown in the Benefit Schedule for each mile you travel. We will measure the mileage from where you live to your destination by using a road atlas to establish and pay for the most direct route.

This benefit has no limit to the number of trips.

## FAMILY MEMBER TRANSPORTATION BENEFIT

You are eligible for this benefit while you are confined as an inpatient to a hospital within the continental U.S. more than 100 miles one-way from your home to receive covered cancer treatments prescribed by your physician that are not available within 100 miles one-way from your home. "Covered cancer treatment" means definitive cancer treatment for which benefits are payable under this policy.

If a family member requires transportation to or from the city where you are confined and the city is more than 100 miles one-way from the family member's home, we will pay actual charges up to the amount shown in the Benefit Schedule for the family member's coach class plane, train or bus fare on a regularly scheduled route. We will not pay the cost to charter a plane, train or bus. If the family member chooses instead to travel by car, we will pay the amount shown in the Benefit Schedule for each mile the family member travels. The mileage benefit is not payable if the family member travels by car with you and you have already been paid for the same trip under the Transportation Benefit. We will measure the mileage from the family member's home to where you are confined by using a road atlas to establish and pay for the most direct route. "Family member" means a spouse, parent, brother, sister, or child of the person receiving treatment.

This benefit is limited to two one-way trips within the U.S. (including Puerto Rico) per period of confinement. Separate confinements within 30 days of each other are considered the same period of confinement. These trips may be taken by the same family member or may be split between two family members.

## FAMILY MEMBER LODGING BENEFIT

You are eligible for this benefit while you are confined as an inpatient to a hospital within the continental U.S. more than 100 miles one-way from your home to receive covered cancer treatments prescribed by your physician that are not available within 100 miles one-way from your home. "Covered cancer treatment" means definitive cancer treatment for which benefits are payable under this policy.

If a family member accompanies you and requires lodging while you are confined to a hospital which is more than 100 miles one-way from the family member's home, we will pay the actual charge for lodging made by a hotel or motel, up to the amount shown in the Benefit Schedule. "Family member" means a spouse, parent, brother, sister, or child of the person receiving treatment. This benefit is limited to payment for one room for each day of your confinement up to a maximum of 60 days for each period of confinement during which the Hospital or U.S. Government Hospital Confinement Benefit is payable. Separate confinements within 30 days of each other are considered the same period of confinement.

## PROSTHESIS BENEFIT

We will pay this benefit for prosthetic devices needed as the direct result of cancer surgery for which you receive benefits under this policy.

We will pay actual charges up to the amount shown in the Benefit Schedule. The amount listed is the maximum payable per device for each person insured by this policy. Devices must be obtained within three years of the date of the cancer surgery. We will not pay for related supplies such as special bras or ostomy pouches. We will not pay for wigs or hairpieces.

**BONE MARROW TRANSPLANT BENEFIT (FOR LEUKEMIA ONLY)**

We will pay the amount shown in the Benefit Schedule if, due to leukemia, you receive a human bone marrow transplant.

A bone marrow transplant is an allogeneic or syngeneic graft of living bone marrow from one human being to another. We will not pay this benefit for autologous bone marrow transplants or for the implantation of artificial or synthetic bone marrow.

We will pay this benefit no more than once for any insured person.

## SECTION 4: LIMITATIONS AND EXCLUSIONS

**CANCER POLICY ONLY**

This policy provides benefits only for loss due to cancer and for your definitive cancer treatment. Proof must be submitted to support each claim. We will not pay for any other disease, sickness or incapacity, or for any illness related to or caused by cancer or cancer treatment.

Benefits paid for any one person shall not exceed the maximum benefits shown in the Benefit Schedule regardless of the number of cancers.

## SECTION 5: WAIVER OF PREMIUM PROVISION

Subject to the conditions of this policy, premium payments will not be required if the Policyowner is:
- diagnosed as having cancer 30 days or more after the Effective Date; and,
- disabled due to cancer for more than 90 consecutive days. Such disability must begin on or after the date of diagnosis and prior to the Policyowner's 65th birthday.

After it has been determined that the Policyowner is disabled, we will waive premium payments for the period of disability, except those due during the first 90 days of such period.

**PROOF OF DISABILITY**

You must send us a physician's statement containing the following:
- the date cancer was diagnosed;
- the date disability, due to cancer, began; and,
- the expected date, if any, such disability will end.

You must furnish proof of continued disability at least once every six months.

**PERIODS OF DISABILITY**

Once disability due to cancer ends for at least 30 days, any future disability will be considered a new period of disability. Such new disability due to cancer will require disability for 90 consecutive days in order for the waiver of premium to begin. New proof of disability must be provided.

**END OF DISABILITY**

You must notify us in writing as soon as disability due to cancer ends. We will assume disability no longer exists if:
- you do not send us proof of continued disability at least once every six months;
- the disabled Policyowner does not agree to have a physical examination performed; or,
- you notify us that disability has ended.

When the Policyowner is no longer disabled due to cancer, insurance will continue until the next month. Thereafter, premium must be paid in order for the policy to continue in force.

## SECTION 6: GENERAL PROVISIONS

**ENTIRE CONTRACT**

The entire contract of insurance consists of:
- the Policy Schedule;
- the policy, including the Benefit Schedule and Surgical and Anesthesia Schedule;
- any attached riders, amendments or endorsements; and,
- all applications.

**CONTRACT CHANGES**

No change to this policy is valid unless it is in writing, endorsed by one of our officers, and attached to this policy. No one else has the authority to change this policy or to waive any of its provisions.

**TERM**

The first term begins at 12:00 noon (Eastern Standard Time) on the Effective Date shown in your Policy Schedule, but insurance will not be effective prior to the time the application is signed by the applicant. The first term ends at 12:00 noon (Eastern Standard Time) on the first renewal date. Each renewal term begins at 12:00 noon (Eastern Standard Time) on the date the previous term ends. Each renewal term ends at 12:00 noon (Eastern Standard Time) on the date to which premium is paid.

Renewal dates are determined by your mode of payment. Your initial mode of payment is shown in the Policy Schedule.

**PREMIUMS**

The first premium is due on the Effective Date. Each premium after the first is due on the last day of the term for which the most recent premium was paid and must be accepted by us at our Executive Office.

> EXCEPTION: During the time, if any, that it is agreed between the Policyowner and us that premiums will be billed and remitted through payroll deduction or credit union share account deduction, premium is due in our Executive Office on the due date indicated in the billing provided to the administrator coordinating premium payments on the Policyowner's behalf.

This policy will not be in force until the first premium is accepted by us. If we accept a premium, this policy will continue in force until the end of the term for which that premium was due.

The amount of the first premium is shown in the Policy Schedule and is based on your initial mode of payment. The amount of each premium after the first is based on your then current mode of payment and the premium then being charged for policies of this form number and premium classification issued in the same state.

**GRACE PERIOD**

After the first premium, if you do not pay a premium when it is due, you can pay it during the next 31 days. These 31 days are called the grace period. During this period the policy will stay in force; however, this policy terminates at 12:00 noon (Eastern Standard Time) on the due date of the unpaid premium if you do not pay the premium by the end of the grace period. Termination will not prejudice a claim for loss incurred prior to the due date of the unpaid premium.

**REINSTATEMENT**

If this policy terminates because the premium is not paid by the end of the grace period, the Policyowner may be able to put the insurance back in force.

If we accept your premium and do not require a reinstatement application, this policy will be reinstated as of 12:00 noon (Eastern Standard Time) on the date we receive the premium. If we require a reinstatement application at the time we accept the premium, we will issue a conditional receipt for the premium. Upon our receipt and approval of the reinstatement application, this policy will be reinstated as of 12:00 noon (Eastern Standard Time) on the date the reinstatement application is approved. If we do not mail written notice of disapproval within 45 days after the date of the conditional receipt, then this policy will automatically be reinstated as of 12:00 noon (Eastern Standard Time) on the 45th day.

Any premium accepted in connection with a reinstatement will be applied to a period for which premium has not previously been paid. This period will not exceed 60 days prior to the date of reinstatement.

The reinstated policy will provide benefits only for loss resulting from cancer or other disease for which benefits are provided by rider, which starts more than 10 days after the reinstatement date. If a Hospital Intensive Care rider is included in this policy, the rider will not provide benefits for hospital confinements, whether or not in an Intensive Care Unit, which begin prior to the reinstatement date.

We reserve the right to make changes in this policy before we reinstate it. Any changes will be noted on or attached to the reinstated policy. In every other way, your rights and our rights will be the same as existed immediately prior to termination.

**CONTINUATION**

If this is a family policy and the Policyowner dies, the spouse may elect to continue insurance for the insured persons. A written request for continuation and the appropriate premium must be sent to us within 60 days of the Policyowner's death.

**CONVERSION**

If this is a family policy, and the spouse would lose insurance due to Policyowner request because of divorce or annulment, or if this is a family or single parent policy and a child would lose insurance because of marriage, attainment of the limiting age or the Policyowner's death, then the spouse and/or child may convert to a separate policy by sending us a written request for conversion, along with the appropriate premium, within 31 days after the date insurance would otherwise end. We will issue, without evidence of insurability, an equal policy or any other similar individual, single parent or family policy, then being issued by us, which contains equal or lesser benefits. The converted insurance, however, will be limited by any exclusions which applied under this policy. Additionally, any benefit amounts paid for a person under this policy will be applied to benefit limits under that person's converted policy.

**TRANSFER FROM PAYROLL DEDUCTION**

If this policy was issued on a payroll deduction payment method as designated in your application and if, after at least one premium payment, premiums cease to be remitted through a valid payroll group, you may continue your insurance by remitting premium through one of our other payment methods then available.

Currently, our other payment methods include:
- monthly deduction from a checking or savings account; and,
- direct bill for an annual or semi-annual premium.

The premium rate will not be increased by this transfer.

**MISSTATEMENTS OF AGE**

If any age or date of birth is misstated in the application, the benefits will be such as the premium paid would have purchased at the correct ages. If based on the correct ages we would not have issued this policy or insured certain members of the Policyowner's family under this policy, then our only responsibility will be to refund any excess premium paid.

**TIME LIMIT ON CERTAIN DEFENSES**

We rely on the statements made in the application when issuing this insurance. After this insurance has been in force for you for two years, we cannot cancel it or refuse to pay benefits for losses commencing after such time because of any misstatements in the application unless the applicant knowingly made them.

No claim for loss incurred after two years from the date you become insured under this policy will be reduced or denied because a disease or physical condition, not excluded by name or specific description before the date of loss, had existed before the effective date of your insurance, subject to SECTION 2, ELIGIBILITY FOR BENEFITS.

If cancer is first diagnosed during the first 30 days after you become insured under this policy, benefits for cancer, excluding the Express Payment Benefit, will only be payable for loss commencing after two years from the date you are insured under this policy.

**CONFORMITY WITH STATE STATUTES**

Any provision of this policy which, on the Effective Date, is in conflict with the laws of the state in which your policy was issued is amended to conform to the minimum requirements of those laws.

# SECTION 7: CLAIM PROVISIONS

**NOTICE OF CLAIM**

Written notice of claim must be given to us within 60 days after the start of a loss or as soon as reasonably possible. The notice must be sent to us at our Executive Office or to an authorized agent. The notice should include your name and policy account number.

**CLAIM FORMS**

When we receive notice of a claim, we will send forms for filing proof of loss. If we do not send these forms within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss within the time stated in the Proofs of Loss section.

**PROOFS OF LOSS**

You must give us written proof satisfactory to us within 90 days after the loss for which you are seeking benefits. If it is not reasonably possible to give written proof in the time required, we will not reduce or deny benefits for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than one year from the date of loss, unless the Policyowner was legally incapacitated during that time.

If the policy provides for periodic payments for continuing loss, written proof of loss must be given to us within 90 days after the end of each period for which we are liable.

One or more of the following together with your written statement may, at our sole discretion, be required as proof of loss:
- completed Company claim forms;
- adoption papers, birth, marriage, and death certificates;
- a pathologist's report;
- a physician's statement;
- itemized bills for services rendered;
- hospital, medical and physician records;
- medical and pharmaceutical receipts; and,
- transportation and lodging receipts.

**TIME OF PAYMENT OF CLAIMS**

After we receive written proof of loss and process your claim, we will pay monthly all benefits then due for claims providing a periodic payment. Benefits for any other loss for which benefits are payable under this policy will be paid when we receive written proof satisfactory to us.

**PAYMENT OF CLAIMS**

Benefits will be paid to the Policyowner. We will not be bound by any assignment of benefits form unless we have given our prior consent. Any benefits unpaid at the time of the Policyowner's death will be paid in the following order: any approved assignee,

Currently, our other payment methods include:
- monthly deduction from a checking or savings account; and,
- direct bill for an annual or semi-annual premium.

The premium rate will not be increased by this transfer.

**MISSTATEMENTS OF AGE**

If any age or date of birth is misstated in the application, the benefits will be such as the premium paid would have purchased at the correct ages. If based on the correct ages we would not have issued this policy or insured certain members of the Policyowner's family under this policy, then our only responsibility will be to refund any excess premium paid.

**TIME LIMIT ON CERTAIN DEFENSES**

We rely on the statements made in the application when issuing this insurance. After this insurance has been in force for you for two years, we cannot cancel it or refuse to pay benefits for losses commencing after such time because of any misstatements in the application unless the applicant knowingly made them.

No claim for loss incurred after two years from the date you become insured under this policy will be reduced or denied because a disease or physical condition, not excluded by name or specific description before the date of loss, had existed before the effective date of your insurance, subject to SECTION 2, ELIGIBILITY FOR BENE-FITS.

If cancer is first diagnosed during the first 30 days after you become insured under this policy, benefits for cancer, excluding the Express Payment Benefit, will only be payable for loss commencing after two years from the date you are insured under this policy.

**CONFORMITY WITH STATE STATUTES**

Any provision of this policy which, on the Effective Date, is in conflict with the laws of the state in which your policy was issued is amended to conform to the minimum requirements of those laws.

# SECTION 7: CLAIM PROVISIONS

**NOTICE OF CLAIM**

Written notice of claim must be given to us within 60 days after the start of a loss or as soon as reasonably possible. The notice must be sent to us at our Executive Office or to an authorized agent. The notice should include your name and policy account number.

**CLAIM FORMS**

When we receive notice of a claim, we will send forms for filing proof of loss. If we do not send these forms within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss within the time stated in the Proofs of Loss section.

**PROOFS OF LOSS**

You must give us written proof satisfactory to us within 90 days after the loss for which you are seeking benefits. If it is not reasonably possible to give written proof in the time required, we will not reduce or deny benefits for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than one year from the date of loss, unless the Policyowner was legally incapacitated during that time.

If the policy provides for periodic payments for continuing loss, written proof of loss must be given to us within 90 days after the end of each period for which we are liable.

One or more of the following together with your written statement may, at our sole discretion, be required as proof of loss:
- completed Company claim forms;
- adoption papers, birth, marriage, and death certificates;
- a pathologist's report;
- a physician's statement;
- itemized bills for services rendered;
- hospital, medical and physician records;
- medical and pharmaceutical receipts; and,
- transportation and lodging receipts.

**TIME OF PAYMENT OF CLAIMS**

After we receive written proof of loss and process your claim, we will pay monthly all benefits then due for claims providing a periodic payment. Benefits for any other loss for which benefits are payable under this policy will be paid when we receive written proof satisfactory to us.

**PAYMENT OF CLAIMS**

Benefits will be paid to the Policyowner. We will not be bound by any assignment of benefits form unless we have given our prior consent. Any benefits unpaid at the time of the Policyowner's death will be paid in the following order: any approved assignee,

This is a summary of benefits for each insured person. Please read your entire contract for further explanations and limitations.

| | |
|---|---|
| Express Payment | $1,000 one-time payment for each insured person |
| Hospital Confinement | Initial amount: $230/day<br>Inflation fighter amount: $0/day |
| Extended Benefits | Actual charges up to $600/day starting with the 90th day of uninterrupted confinement |
| U.S. Government Hospital Confinement | Initial amount: $230/day<br>Inflation fighter amount: $0/day |
| Drugs and Diagnostic Testing | Actual charges up to $25/day |
| Mammography Screening | $30 |
| Attending Physician | Actual charges up to $30/day |
| Private Nurse | Actual charges up to $125/day |
| Ambulance | Actual charges up to $150/one-way trip |
| Radiation/Chemotherapy | Actual charges up to $175/day<br>First Treatment: $100 |
| Comfort (Outpatient Drugs) | Not included in this Plan |
| Surgical Procedure | See attached Surgical and Anesthesia Schedule |
| Second and Third Surgical Opinions | Actual charges up to $150/opinion |
| Anesthesia | See attached Surgical and Anesthesia Schedule |
| Blood and Plasma | $40/unit |
| Skilled Nursing Facility | Actual charges up to $100/day |
| Home Care and Recovery | $15/day |
| Prosthesis | Actual charges up to $1,000/device |
| Hospice<br>  Days 1 – 60<br>  Days 61 and after | <br>$80/day<br>$40/day |
| Transportation | Actual charges up to $1,000/one-way trip for plane, train or bus; or $0.25/mile for automobile |
| Family Member Transportation | Actual charges up to $1,000/one-way trip for plane, train or bus; or $0.25/mile for automobile |
| Family Member Lodging | Actual charges up to $40/day |
| Bone Marrow Transplant<br>(for leukemia only) | $2,500 for each insured person |

THIS IS A LIMITED POLICY
PLEASE READ CAREFULLY

**CHOICE B**
**(1,000/230)**

If you have a surgical procedure performed which is not shown in this Surgical and Anesthesia Schedule, we will pay a benefit amount based on the difficulty of the procedure as compared to the difficulty of the procedures shown.

| SURGICAL PROCEDURE | PROCEDURE CODE | SURGICAL BENEFIT | ANESTHESIA BENEFIT |
|---|---|---|---|
| **ABDOMEN** | | | |
| Abdominal paracentesis | 49080 | $135 | $34 |
| Excision of intra-abdominal or retroperitoneal tumor | 49200 | $420 | $105 |
| Staging celiotomy (Hodgkin's or Lymphoma) | 49220 | $660 | $165 |
| **BLADDER** | | | |
| Cystotomy for excision of bladder tumor | 51530 | $450 | $113 |
| Cystectomy, complete; with bilateral pelvic lymphadenectomy | 51575 | $1,387 | $347 |
| Cystectomy, complete; with ureteroileal conduit or sigmoid bladder, including bowel anastomosis | 51590 | $1,942 | $486 |
| with bilateral pelvic lymphadenectomy, including external iliac, hypogastric and obturator nodes | 51595 | $2,466 | $617 |
| Pelvic exenteration, complete, for vesical, prostatic or urethral malignancy, with removal of bladder and ureteral transplantation | 51597 | $2,071 | $518 |
| Cystourethroscopy with biopsy | 52204 | $135 | $34 |
| Cystourethroscopy, with fulguration and/or resection of medium tumor(s) (2.0 - 5.0 cm) | 52235 | $360 | $90 |
| **BONE** | | | |
| Biopsy, bone, trocar or needle; superficial | 20220 | $135 | $34 |
| Radical resection of sternum for tumor with mediastinal lymphadenectomy | 21632 | $1,726 | $432 |
| **BRAIN** | | | |
| Craniectomy for tumor of skull | 61500 | $1,332 | $333 |
| Excision brain tumor, supratentorial | 61510 | $1,726 | $432 |
| Excision brain tumor, infratentorial or posterior fossa | 61518 | $1,899 | $475 |
| Cerebellopontine angle tumor | 61520 | $2,466 | $617 |
| Midline tumor at base of skull | 61521 | $3,700 | $925 |
| Excision of craniopharingioma | 61545 | $4,500 | $1,125 |
| Hypophysectomy, intracranial approach | 61546 | $1,834 | $459 |
| **BREAST** | | | |
| Biopsy of breast, incisional (separate procedure) | 19101 | $135 | $34 |
| Excision of malignant tumor | 19120 | $150 | $38 |
| Mastectomy, partial | 19160 | $180 | $45 |
| Mastectomy, simple, complete | 19180 | $312 | $78 |
| Mastectomy, radical including pectoral muscles, axillary and internal mammary lymph nodes | 19220 | $780 | $195 |
| Mastectomy, modified radical, including axillary lymph nodes and pectoralis minor muscle, but excluding pectoralis major muscle | 19240 | $570 | $143 |
| Excision of chest wall tumor involving ribs, with plastic reconstruction; with mediastinal lymphadenectomy | 19272 | $1,295 | $324 |
| **CHEST** | | | |
| Bronchoscopy with biopsy | 31625 | $174 | $44 |
| Thoracentesis for biopsy | 32000 | $135 | $34 |
| Biopsy, lung or mediastinum, percutaneous needle | 32405 | $135 | $34 |
| Pneumonectomy, total | 32440 | $925 | $231 |
| Lobectomy, total or segmental | 32480 | $810 | $203 |
| Excision of mediastinal tumor | 39220 | $546 | $137 |

If you have a surgical procedure performed which is not shown in this Surgical and Anesthesia Schedule, we will pay a benefit amount based on the difficulty of the procedure as compared to the difficulty of the procedures shown.

| SURGICAL PROCEDURE | PROCEDURE CODE | SURGICAL BENEFIT | ANESTHESIA BENEFIT |
|---|---|---|---|
| **ABDOMEN** | | | |
| Abdominal paracentesis | 49080 | $135 | $34 |
| Excision of intra-abdominal or retroperitoneal tumor | 49200 | $420 | $105 |
| Staging celiotomy (Hodgkin's or Lymphoma) | 49220 | $660 | $165 |
| **BLADDER** | | | |
| Cystotomy for excision of bladder tumor | 51530 | $450 | $113 |
| Cystectomy, complete; with bilateral pelvic lymphadenectomy | 51575 | $1,387 | $347 |
| Cystectomy, complete; with ureteroileal conduit or sigmoid bladder, including bowel anastomosis | 51590 | $1,942 | $486 |
| with bilateral pelvic lymphadenectomy, including external iliac, hypogastric and obturator nodes | 51595 | $2,466 | $617 |
| Pelvic exenteration, complete, for vesical, prostatic or urethral malignancy, with removal of bladder and ureteral transplantation | 51597 | $2,071 | $518 |
| Cystourethroscopy with biopsy | 52204 | $135 | $34 |
| Cystourethroscopy, with fulguration and/or resection of medium tumor(s) (2.0 - 5.0 cm) | 52235 | $360 | $90 |
| **BONE** | | | |
| Biopsy, bone, trocar or needle; superficial | 20220 | $135 | $34 |
| Radical resection of sternum for tumor with mediastinal lymphadenectomy | 21632 | $1,726 | $432 |
| **BRAIN** | | | |
| Craniectomy for tumor of skull | 61500 | $1,332 | $333 |
| Excision brain tumor, supratentorial | 61510 | $1,726 | $432 |
| Excision brain tumor, infratentorial or posterior fossa | 61518 | $1,899 | $475 |
| Cerebellopontine angle tumor | 61520 | $2,466 | $617 |
| Midline tumor at base of skull | 61521 | $3,700 | $925 |
| Excision of craniopharyngioma | 61545 | $4,500 | $1,125 |
| Hypophysectomy, intracranial approach | 61546 | $1,834 | $459 |
| **BREAST** | | | |
| Biopsy of breast, incisional (separate procedure) | 19101 | $135 | $34 |
| Excision of malignant tumor | 19120 | $150 | $38 |
| Mastectomy, partial | 19160 | $180 | $45 |
| Mastectomy, simple, complete | 19180 | $312 | $78 |
| Mastectomy, radical including pectoral muscles, axillary and internal mammary lymph nodes | 19220 | $780 | $195 |
| Mastectomy, modified radical, including axillary lymph nodes and pectoralis minor muscle, but excluding pectoralis major muscle | 19240 | $570 | $143 |
| Excision of chest wall tumor involving ribs, with plastic reconstruction; with mediastinal lymphadenectomy | 19272 | $1,295 | $324 |
| **CHEST** | | | |
| Bronchoscopy with biopsy | 31625 | $174 | $44 |
| Thoracentesis for biopsy | 32000 | $135 | $34 |
| Biopsy, lung or mediastinum, percutaneous needle | 32405 | $135 | $34 |
| Pneumonectomy, total | 32440 | $925 | $231 |
| Lobectomy, total or segmental | 32480 | $810 | $203 |
| Excision of mediastinal tumor | 39220 | $546 | $137 |

# SURGICAL and ANESTHESIA SCHEDULE
## (CHOICE B)

| SURGICAL PROCEDURE | PROCEDURE CODE | SURGICAL BENEFIT | ANESTHESIA BENEFIT |
|---|---|---|---|
| **LYMPHATIC SYSTEM** | | | |
| Biopsy or excision of cervical lymph node; deep | 38510 | $135 | $34 |
| Cervical lymphadenectomy (complete) | 38720 | $630 | $158 |
| | | | |
| **MOUTH** | | | |
| Excision of lip; transverse wedge excision | | | |
| with primary closure | 40510 | $225 | $56 |
| Hemiglossectomy | 41130 | $330 | $83 |
| Glossectomy | | | |
| Partial, with unilateral radical neck dissection | 41135 | $660 | $165 |
| Total, with unilateral radical neck dissection | 41145 | $840 | $210 |
| With resection, floor of mouth, mandibular resection and | | | |
| radical neck dissection (commando type) | 41155 | $925 | $231 |
| Resection, palate | 42120 | $660 | $165 |
| | | | |
| **OVARY** | | | |
| Wedge resection or bisection | 58920 | $330 | $83 |
| | | | |
| **PANCREAS** | | | |
| Excisional biopsy (independent procedure) | 48100 | $450 | $113 |
| Pancreatectomy with pancreaticoduodenectomy | | | |
| and pancreaticojejunostomy | 48150 | $1,295 | $324 |
| | | | |
| **PAROTID** | | | |
| Excision parotid tumor, lateral lobe, without nerve dissection | 42410 | $186 | $47 |
| Total, with unilateral radical neck dissection | 42426 | $840 | $210 |
| | | | |
| **PELVIS** | | | |
| Radical resection for tumor | 27075 | $540 | $135 |
| Innominate bone (total) | 27077 | $1,942 | $486 |
| | | | |
| **PENIS** | | | |
| Amputation, partial | 54120 | $300 | $75 |
| Complete | 54125 | $600 | $150 |
| Radical with bilateral inguinofemoral lymphadenectomy | 54130 | $840 | $210 |
| | | | |
| **PROSTATE** | | | |
| Biopsy, needle or punch, single or multiple, any approach | 55700 | $135 | $34 |
| Transurethral resection of prostate | 52601 | $600 | $150 |
| Prostatectomy, retropubic radical; with bilateral pelvic | | | |
| lymphadenectomy, including external iliac, hypogastric | | | |
| and obturator nodes | 55845 | $1,295 | $324 |
| | | | |
| **SINUS** | | | |
| Maxillectomy with orbital exenteration | 31230 | $840 | $210 |
| | | | |
| **SKIN** | | | |
| Excision of malignant lesion; diameter 1.1 – 2.0 CM | | | |
| On trunk, arms or legs | 11602 | $135 | $34 |
| On scalp, neck, hands, feet or genitalia | 11622 | $135 | $34 |
| On face, ears, eyelids, nose or lips | 11642 | $150 | $38 |
| Destruction of malignant lesion; diameter 1.1 – 2.0 CM | | | |
| On trunk, arms or legs | 17262 | $135 | $34 |
| On scalp, neck, hands, feet or genitalia | 17272 | $135 | $34 |
| On face, ears, eyelids, nose or lips | 17282 | $135 | $34 |

# SURGICAL and ANESTHESIA SCHEDULE
## (CHOICE B)

| SURGICAL PROCEDURE | PROCEDURE CODE | SURGICAL BENEFIT | ANESTHESIA BENEFIT |
|---|---|---|---|
| **LYMPHATIC SYSTEM** | | | |
| Biopsy or excision of cervical lymph node; deep | 38510 | $135 | $34 |
| Cervical lymphadenectomy (complete) | 38720 | $630 | $158 |
| | | | |
| **MOUTH** | | | |
| Excision of lip; transverse wedge excision | | | |
| with primary closure | 40510 | $225 | $56 |
| Hemiglossectomy | 41130 | $330 | $83 |
| Glossectomy | | | |
| Partial, with unilateral radical neck dissection | 41135 | $660 | $165 |
| Total, with unilateral radical neck dissection | 41145 | $840 | $210 |
| With resection, floor of mouth, mandibular resection and | | | |
| radical neck dissection (commando type) | 41155 | $925 | $231 |
| Resection, palate | 42120 | $660 | $165 |
| | | | |
| **OVARY** | | | |
| Wedge resection or bisection | 58920 | $330 | $83 |
| | | | |
| **PANCREAS** | | | |
| Excisional biopsy (independent procedure) | 48100 | $450 | $113 |
| Pancreatectomy with pancreaticoduodenectomy | | | |
| and pancreaticojejunostomy | 48150 | $1,295 | $324 |
| | | | |
| **PAROTID** | | | |
| Excision parotid tumor, lateral lobe, without nerve dissection | 42410 | $186 | $47 |
| Total, with unilateral radical neck dissection | 42426 | $840 | $210 |
| | | | |
| **PELVIS** | | | |
| Radical resection for tumor | 27075 | $540 | $135 |
| Innominate bone (total) | 27077 | $1,942 | $486 |
| | | | |
| **PENIS** | | | |
| Amputation, partial | 54120 | $300 | $75 |
| Complete | 54125 | $600 | $150 |
| Radical with bilateral inguinofemoral lymphadenectomy | 54130 | $840 | $210 |
| | | | |
| **PROSTATE** | | | |
| Biopsy, needle or punch, single or multiple, any approach | 55700 | $135 | $34 |
| Transurethral resection of prostate | 52601 | $600 | $150 |
| Prostatectomy, retropubic radical; with bilateral pelvic | | | |
| lymphadenectomy, including external iliac, hypogastric | | | |
| and obturator nodes | 55845 | $1,295 | $324 |
| | | | |
| **SINUS** | | | |
| Maxillectomy with orbital exenteration | 31230 | $840 | $210 |
| | | | |
| **SKIN** | | | |
| Excision of malignant lesion; diameter 1.1 - 2.0 CM | | | |
| On trunk, arms or legs | 11602 | $135 | $34 |
| On scalp, neck, hands, feet or genitalia | 11622 | $135 | $34 |
| On face, ears, eyelids, nose or lips | 11642 | $150 | $38 |
| Destruction of malignant lesion; diameter 1.1 - 2.0 CM | | | |
| On trunk, arms or legs | 17262 | $135 | $34 |
| On scalp, neck, hands, feet or genitalia | 17272 | $135 | $34 |
| On face, ears, eyelids, nose or lips | 17282 | $135 | $34 |

FORM CH00B/SS1ST-A

PAGE 2

# SURGICAL and ANESTHESIA SCHEDULE
## (CHOICE B)

| SURGICAL PROCEDURE | PROCEDURE CODE | SURGICAL BENEFIT | ANESTHESIA BENEFIT |
|---|---|---|---|
| **SPINE** | | | |
| Resection tumor, radical, soft tissue of flank or back | 21935 | $450 | $113 |
| Partial resection of vertebral component for cervical tumor | 22105 | $360 | $90 |
| Biopsy of spinal cord, percutaneous needle | 62269 | $504 | $126 |
| Laminectomy for biopsy/excision of intraspinal neoplasm; | | | |
| Extradural, cervical | 63275 | $1,726 | $432 |
| Intradural, intramedullary, thoracic | 63286 | $2,466 | $617 |
| | | | |
| **STOMACH** | | | |
| Gastric biopsy by laparotomy | 43605 | $405 | $101 |
| Local excision of tumor | 43610 | $450 | $113 |
| Total gastrectomy including intestinal anastomosis | 43620 | $840 | $210 |
| Hemigastrectomy with vagotomy | 43635 | $690 | $173 |
| | | | |
| **TESTIS** | | | |
| Biopsy, incisional (independent procedure) | 54505 | $135 | $34 |
| Orchiectomy, radical, for tumor, inguinal approach | 54530 | $285 | $71 |
| With abdominal exploration | 54535 | $375 | $94 |
| | | | |
| **THROAT** | | | |
| Laryngectomy, total, without radical neck dissection | 31360 | $750 | $188 |
| With radical neck dissection | 31365 | $1,332 | $333 |
| Pharyngolaryngectomy with radical neck dissection | 31390 | $955 | $239 |
| Laryngoscopy, direct, operative, with biopsy | 31535 | $180 | $45 |
| | | | |
| **THYROID** | | | |
| Thyroidectomy for malignancy | 60252 | $780 | $195 |
| With radical neck dissection | 60254 | $870 | $218 |
| | | | |
| **UTERUS** | | | |
| Colposcopy with biopsy | 57454 | $135 | $34 |
| Dilation and curettage with biopsy | 58120 | $135 | $34 |
| Radical abdominal hysterectomy, with bilateral | | | |
| total pelvic and limited para-aortic lymphadenectomy | 58210 | $1,295 | $324 |
| | | | |
| **URINARY** | | | |
| Ureterectomy, with bladder cuff (independent procedure) | 50650 | $600 | $150 |
| Total, ectopic ureter; combination abdominal, vaginal and/or | | | |
| perineal approach | 50660 | $840 | $210 |
| Ureteral endoscopy with biopsy | 50974 | $135 | $34 |
| | | | |
| **VULVA** | | | |
| Vulvectomy, complete | 56625 | $465 | $116 |
| Radical | 56630 | $660 | $165 |
| With inguinofemoral, iliac, and pelvic lymphadenectomy | 56640 | $1,350 | $338 |

FORM CHO2BKSS1ST A

# CAPITOL AMERICAN LIFE INSURANCE COMPANY

Home Office: Phoenix, Arizona
**Executive Office: 1001 Lakeside Avenue**
**Cleveland, Ohio 44114-1195**
**(216) 696-6400**

## NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Tennessee who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Tennessee Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policy-holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The state law that provides for this safety-net coverage is called the Tennessee Life and Health Insurance Guaranty Association Act. The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

COVERAGE

Generally, individuals will be protected by the life and health insurance guaranty association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by an insurer authorized to conduct business in Tennessee. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this association if:

1. they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

2. the insurer was not authorized to do business in this state;

3. their policy was issued by a nonprofit hospital or medical service organization (the "Blues"), an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policy-holder is subject to future assessments, or by an insurance exchange.

The association also does not provide coverage for:

1. any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

2. any policy of reinsurance (unless an assumption certified was issued);

3. interest rate yields that exceed an average rate;

4. dividends;

5. credits given in connection with the administration of a policy by a group contractholder;

6. employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);

# CAPITOL AMERICAN LIFE INSURANCE COMPANY

Home Office: Phoenix, Arizona
**Executive Office: 1001 Lakeside Avenue**
**Cleveland, Ohio 44114-1195**
**(216) 696-6400**

## NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Tennessee who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Tennessee Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policy-holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The state law that provides for this safety-net coverage is called the Tennessee Life and Health Insurance Guaranty Association Act. The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

COVERAGE

Generally, individuals will be protected by the life and health insurance guaranty association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by an insurer authorized to conduct business in Tennessee. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this association if:

1. they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

2. the insurer was not authorized to do business in this state;

3. their policy was issued by a nonprofit hospital or medical service organization (the "Blues"), an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policy-holder is subject to future assessments, or by an insurance exchange.

The association also does not provide coverage for:

1. any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

2. any policy of reinsurance (unless an assumption certified was issued);

3. interest rate yields that exceed an average rate;

4. dividends;

5. credits given in connection with the administration of a policy by a group contractholder;

6. employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);

7. unallocated annuity contracts (which give rights to group contractholders, not individuals), unless qualified under Section 403(b) of the Internal Revenue Code, except that, even if qualified under Section 403(b), unallocated annuities issued to employee benefit plans protected by the federal Pension Benefit Guaranty Corporation are not covered.

## LIMITS ON AMOUNT OF COVERAGE

The act also limits that amount the association is obligated to pay out: The association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the association will pay a maximum of $300,000 no matter how may policies and contracts there were with the same company, even if they provided different types of coverage. Within this overall $300,000 limit, the association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits - again, no matter how many policies and contracts there were with the same company, and no matter how may different types of coverages.

---

The Tennessee Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Tennessee. You should not rely on coverage by the Tennessee Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.

The Tennessee Life and Health Insurance Guaranty Association
P.O. Box 25th Floor
511 Union Street
Nashville, Tennessee 37219

Tennessee Department of Commerce and Insurance
500 James Robertson Parkway
Nashville, Tennessee 37243

---

FORM ST000/ES9TN-AGA

PAGE 2

# CAPITOL AMERICAN LIFE INSURANCE COMPANY

Home Office: Phoenix, Arizona
**Executive Office: 1001 Lakeside Avenue**
**Cleveland, Ohio 44114-1195**
**(216) 696-6400**

## CASH VALUE RIDER

**RIDER EFFECTIVE DATE**   If issued at the same time as the policy, the Rider Effective Date is the policy Effective Date. If issued after the policy Effective Date, the Rider Effective Date will be indicated in the Policy Schedule issued with this rider.

## SECTION 1: DEFINITIONS

When the terms below are used in this rider, the following definitions will apply.

**YOU, YOURS**   Means the person named in the Policy Schedule as the Policyowner on the Rider Effective Date.

**CLAIMS INCURRED**   Claims are considered incurred on the date an event for which we pay benefits occurs or, in the case of a continuing claim, an earlier date as determined by the Company based on a related prior event.

**CASH VALUE PERIOD**   Means the period of time from the Rider Effective Date to the first Maturity Date, or from any Maturity Date to the next.

Based on your age at the beginning of a Cash Value Period, the length of the period will be as follows:

- <u>BEGINNING AT AGE 50 OR UNDER:</u>   25 years.
- <u>BEGINNING AT AGE 51 THROUGH 60:</u>   The number of years from the beginning of the Cash Value Period to the first rider anniversary date after you reach age 75.
- <u>BEGINNING AT AGE 61 OR OVER:</u>   15 years.

**MATURITY DATE**   Means the date on which a Cash Value Period ends and you become entitled to the Cash Value Maturity Benefit provided by this rider.

## SECTION 2: BENEFITS

**CASH VALUE MATURITY BENEFIT**   We will pay you this benefit if you keep your policy and this rider in force until a Maturity Date. You do not need to surrender your policy and this rider at a Maturity Date to receive this benefit.

After each Maturity Date, you will automatically begin a new Cash Value Period.

If total benefits paid for claims during a Cash Value Period would exceed the Cash Value Maturity Benefit payable on the Maturity Date, then a new Cash Value Period will begin on the next Rider Anniversary Date following the date benefits paid for claims exceed the Cash Value Maturity Benefit. The length of the new Cash Value Period will be as defined above based on your attained age.

**CASH VALUE SURRENDER BENEFIT**   If, after five years of a Cash Value Period and prior to the Maturity Date, you:
- surrender both this rider and the policy;
- cancel your policy or allow the policy to terminate; or,
- die, and if this is a family policy, and your spouse does not continue insurance under the policy,

FORM CV-CH-TN-A

we will pay this benefit to you, or in the event of your death, your spouse, if any, or your estate. This rider and the policy will cease to be in force as of the date to which the Cash Value Surrender Benefit is calculated and may not be reinstated after this date.

**BENEFIT AMOUNT**

The Benefit Amount is equal to the total premiums paid (policy plus any riders) for the elapsed portion of a Cash Value Period multiplied by the applicable percentage based on your age at the beginning of the Cash Value Period, minus any claims incurred (policy plus any riders) during the Cash Value Period. The applicable percentages are listed in the Table of Cash Value Percentages.

For surrenders on other than a rider anniversary date, we will interpolate to determine the appropriate Cash Value Percentage.

## SECTION 3: TABLE OF CASH VALUE PERCENTAGES

**AGE AT BEGINNING OF CASH VALUE PERIOD**

| COMPLETED YEARS OF PREMIUM PAYMENT | 15 and under | 16 thru 20 | 21 thru 25 | 26 thru 30 | 31 thru 35 | 36 thru 40 | 41 thru 45 | 46 thru 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 | 61 and over |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| 2 | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| 3 | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| 4 | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| 5 | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| 6 | 12% | 12% | 12% | 12% | 11% | 10% | 9% | 8% | 8% | 8% | 9% | 10% | 10% | 11% | 12% | 13% | 14% | 15% | 11% |
| 7 | 22% | 21% | 21% | 20% | 19% | 18% | 16% | 13% | 14% | 15% | 16% | 17% | 18% | 19% | 21% | 22% | 24% | 27% | 21% |
| 8 | 29% | 29% | 28% | 27% | 26% | 25% | 22% | 18% | 19% | 21% | 22% | 23% | 25% | 27% | 29% | 31% | 34% | 37% | 29% |
| 9 | 36% | 35% | 34% | 33% | 32% | 30% | 27% | 23% | 24% | 25% | 27% | 29% | 31% | 33% | 36% | 39% | 42% | 46% | 36% |
| 10 | 41% | 41% | 40% | 39% | 37% | 35% | 31% | 26% | 28% | 30% | 32% | 34% | 36% | 39% | 42% | 46% | 50% | 54% | 43% |
| 11 | 46% | 45% | 45% | 43% | 42% | 39% | 35% | 30% | 32% | 34% | 36% | 39% | 42% | 45% | 48% | 52% | 57% | 63% | 49% |
| 12 | 50% | 50% | 49% | 48% | 46% | 43% | 39% | 34% | 36% | 38% | 41% | 43% | 47% | 50% | 55% | 59% | 65% | 71% | 56% |
| 13 | 55% | 54% | 53% | 52% | 50% | 47% | 43% | 37% | 39% | 42% | 45% | 48% | 52% | 56% | 61% | 66% | 73% | 80% | 64% |
| 14 | 59% | 58% | 57% | 56% | 54% | 51% | 47% | 41% | 43% | 46% | 49% | 53% | 57% | 62% | 68% | 74% | 81% | 90% | 71% |
| 15 | 62% | 62% | 61% | 60% | 58% | 55% | 50% | 44% | 47% | 50% | 54% | 58% | 63% | 68% | 75% | 82% | 90% | 100% | 80% |
| 16 | 66% | 66% | 65% | 64% | 62% | 59% | 54% | 48% | 51% | 55% | 59% | 64% | 69% | 75% | 82% | 90% | 100% |  |  |
| 17 | 70% | 69% | 68% | 67% | 65% | 63% | 58% | 52% | 55% | 60% | 64% | 70% | 76% | 83% | 91% | 100% |  |  |  |
| 18 | 74% | 73% | 72% | 71% | 69% | 66% | 62% | 56% | 60% | 65% | 70% | 76% | 83% | 91% | 100% |  |  |  |  |
| 19 | 77% | 77% | 76% | 75% | 73% | 71% | 66% | 60% | 65% | 70% | 76% | 83% | 91% | 100% |  |  |  |  |  |
| 20 | 81% | 80% | 80% | 79% | 77% | 75% | 69% | 65% | 72% | 80% | 89% | 91% | 100% |  |  |  |  |  |  |
| 21 | 85% | 84% | 84% | 83% | 81% | 79% | 77% | 72% | 80% | 89% | 91% | 100% |  |  |  |  |  |  |  |
| 22 | 88% | 88% | 87% | 87% | 86% | 84% | 81% | 77% | 83% | 91% | 100% |  |  |  |  |  |  |  |  |
| 23 | 92% | 92% | 92% | 91% | 90% | 89% | 87% | 84% | 91% | 100% |  |  |  |  |  |  |  |  |  |
| 24 | 96% | 96% | 96% | 95% | 95% | 94% | 93% | 91% | 100% |  |  |  |  |  |  |  |  |  |  |
| 25 | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |  |  |  |  |  |  |  |  |  |  |  |

## SECTION 4: GENERAL PROVISIONS

**EFFECT OF WAIVER OF PREMIUM ON CASH VALUE BENEFITS**

Premiums waived under any Waiver of Premium Provision of the policy will be treated both as premiums paid and claims incurred for the purposes of calculating benefits under this rider.

**CHANGE IN PREMIUM**

If the premium for the policy or any rider changes for any reason, you will be notified of the revised premium. We will calculate your benefit based on both the original premium paid and the revised premium paid.

**TERMINATION AND REINSTATEMENT**

If you allow the policy to terminate and it is later reinstated, then all Maturity Dates will be deferred by the period of time that the policy was inactive.

EXCEPTION: If a Maturity Date occurs on the rider anniversary date after you reach age 75, we will not defer that Maturity Date.

FORM CV-CH-TN-A

PAGE 2

# CAPITOL AMERICAN LIFE INSURANCE COMPANY

Home Office: Phoenix, Arizona
**Executive Office: 1001 Lakeside Avenue**
**Cleveland, Ohio 44114-1195**
**(216) 696-6400**

## NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Tennessee who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Tennessee Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policy-holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The state law that provides for this safety-net coverage is called the Tennessee Life and Health Insurance Guaranty Association Act. The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

COVERAGE

Generally, individuals will be protected by the life and health insurance guaranty association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by an insurer authorized to conduct business in Tennessee. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this association if:

1. they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

2. the insurer was not authorized to do business in this state;

3. their policy was issued by a nonprofit hospital or medical service organization (the "Blues"), an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policy-holder is subject to future assessments, or by an insurance exchange.

The association also does not provide coverage for:

1. any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

2. any policy of reinsurance (unless an assumption certified was issued);

3. interest rate yields that exceed an average rate;

4. dividends;

5. credits given in connection with the administration of a policy by a group contractholder;

6. employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);

FORM ST000/ECRTN-ACA

7.   unallocated annuity contracts (which give rights to group contractholders, not individuals), unless qualified under Section 403(b) of the Internal Revenue Code, except that, even if qualified under Section 403(b), unallocated annuities issued to employee benefit plans protected by the federal Pension Benefit Guaranty Corporation are not covered.

## LIMITS ON AMOUNT OF COVERAGE

The act also limits that amount the association is obligated to pay out: The association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the association will pay a maximum of $300,000 no matter how may policies and contracts there were with the same company, even if they provided different types of coverage. Within this overall $300,000 limit, the association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits – again, no matter how many policies and contracts there were with the same company, and no matter how may different types of coverages.

---

The Tennessee Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Tennessee. You should not rely on coverage by the Tennessee Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.

The Tennessee Life and Health Insurance Guaranty Association
P.O. Box 25th Floor
511 Union Street
Nashville, Tennessee 37219

Tennessee Department of Commerce and Insurance
500 James Robertson Parkway
Nashville, Tennessee 37243

FORM ST000/ES9TN-AGA                                                                                    PAGE 2

# CAPITOL AMERICAN LIFE INSURANCE COMPANY

Home Office: Phoenix, Arizona
**Executive Office: 1001 Lakeside Avenue**
**Cleveland, Ohio 44114-1195**
**(216) 696-6400**

## CASH VALUE RIDER

**RIDER EFFECTIVE DATE**  If issued at the same time as the policy, the Rider Effective Date is the policy Effective Date. If issued after the policy Effective Date, the Rider Effective Date will be indicated in the Policy Schedule issued with this rider.

## SECTION 1: DEFINITIONS

When the terms below are used in this rider, the following definitions will apply.

**YOU, YOURS**  Means the person named in the Policy Schedule as the Policyowner on the Rider Effective Date.

**CLAIMS INCURRED**  Claims are considered incurred on the date an event for which we pay benefits occurs or, in the case of a continuing claim, an earlier date as determined by the Company based on a related prior event.

**CASH VALUE PERIOD**  Means the period of time from the Rider Effective Date to the first Maturity Date, or from any Maturity Date to the next.

Based on your age at the beginning of a Cash Value Period, the length of the period will be as follows:

- <u>BEGINNING AT AGE 50 OR UNDER:</u>  25 years.
- <u>BEGINNING AT AGE 51 THROUGH 60:</u>  The number of years from the beginning of the Cash Value Period to the first rider anniversary date after you reach age 75.
- <u>BEGINNING AT AGE 61 OR OVER:</u>  15 years.

**MATURITY DATE**  Means the date on which a Cash Value Period ends and you become entitled to the Cash Value Maturity Benefit provided by this rider.

## SECTION 2: BENEFITS

**CASH VALUE MATURITY BENEFIT**  We will pay you this benefit if you keep your policy and this rider in force until a Maturity Date. You do not need to surrender your policy and this rider at a Maturity Date to receive this benefit.

After each Maturity Date, you will automatically begin a new Cash Value Period.

If total benefits paid for claims during a Cash Value Period would exceed the Cash Value Maturity Benefit payable on the Maturity Date, then a new Cash Value Period will begin on the next Rider Anniversary Date following the date benefits paid for claims exceed the Cash Value Maturity Benefit. The length of the new Cash Value Period will be as defined above based on your attained age.

**CASH VALUE SURRENDER BENEFIT**  If, after five years of a Cash Value Period and prior to the Maturity Date, you:
- surrender both this rider and the policy;
- cancel your policy or allow the policy to terminate; or,
- die, and if this is a family policy, and your spouse does not continue insurance under the policy,

FORM CV-CH-TN-A

we will pay this benefit to you, or in the event of your death, your spouse, if any, or your estate. This rider and the policy will cease to be in force as of the date to which the Cash Value Surrender Benefit is calculated and may not be reinstated after this date.

**BENEFIT AMOUNT**

The Benefit Amount is equal to the total premiums paid (policy plus any riders) for the elapsed portion of a Cash Value Period multiplied by the applicable percentage based on your age at the beginning of the Cash Value Period, minus any claims incurred (policy plus any riders) during the Cash Value Period. The applicable percentages are listed in the Table of Cash Value Percentages.

For surrenders on other than a rider anniversary date, we will interpolate to determine the appropriate Cash Value Percentage.

# SECTION 3: TABLE OF CASH VALUE PERCENTAGES

### AGE AT BEGINNING OF CASH VALUE PERIOD

| COMPLETED YEARS OF PREMIUM PAYMENT | 15 and under | 16 thru 20 | 21 thru 25 | 26 thru 30 | 31 thru 35 | 36 thru 40 | 41 thru 45 | 46 thru 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 | 61 and over |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| 2 | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| 3 | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| 4 | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| 5 | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| 6 | 12% | 12% | 12% | 12% | 11% | 10% | 9% | 8% | 8% | 8% | 9% | 10% | 10% | 11% | 12% | 13% | 14% | 15% | 11% |
| 7 | 22% | 21% | 21% | 20% | 19% | 18% | 16% | 13% | 14% | 15% | 16% | 17% | 18% | 19% | 21% | 22% | 24% | 27% | 21% |
| 8 | 29% | 29% | 28% | 27% | 26% | 25% | 22% | 18% | 19% | 21% | 22% | 23% | 25% | 27% | 29% | 31% | 34% | 37% | 29% |
| 9 | 36% | 35% | 34% | 33% | 32% | 30% | 27% | 23% | 24% | 25% | 27% | 29% | 31% | 33% | 36% | 39% | 42% | 46% | 36% |
| 10 | 41% | 41% | 40% | 39% | 37% | 35% | 31% | 26% | 28% | 30% | 32% | 34% | 36% | 39% | 42% | 46% | 50% | 54% | 43% |
| 11 | 46% | 45% | 45% | 43% | 42% | 39% | 35% | 30% | 32% | 34% | 36% | 39% | 42% | 45% | 48% | 52% | 57% | 63% | 49% |
| 12 | 50% | 50% | 49% | 48% | 46% | 43% | 39% | 34% | 36% | 38% | 41% | 43% | 47% | 50% | 55% | 59% | 66% | 73% | 56% |
| 13 | 55% | 54% | 53% | 52% | 50% | 47% | 43% | 37% | 39% | 42% | 45% | 48% | 52% | 56% | 61% | 66% | 73% | 80% | 64% |
| 14 | 59% | 58% | 57% | 56% | 54% | 51% | 47% | 41% | 43% | 46% | 49% | 53% | 57% | 62% | 68% | 74% | 81% | 90% | 71% |
| 15 | 62% | 62% | 61% | 60% | 58% | 55% | 50% | 44% | 47% | 50% | 54% | 58% | 63% | 68% | 75% | 82% | 90% | 100% | 80% |
| 16 | 66% | 66% | 65% | 64% | 62% | 59% | 54% | 48% | 51% | 55% | 59% | 64% | 69% | 75% | 82% | 90% | 100% | | |
| 17 | 70% | 69% | 68% | 67% | 65% | 63% | 58% | 52% | 55% | 60% | 64% | 70% | 76% | 83% | 91% | 100% | | | |
| 18 | 74% | 73% | 72% | 71% | 69% | 66% | 62% | 56% | 60% | 65% | 70% | 76% | 83% | 91% | 100% | | | | |
| 19 | 77% | 77% | 76% | 75% | 73% | 71% | 66% | 60% | 65% | 70% | 76% | 83% | 91% | 100% | | | | | |
| 20 | 81% | 80% | 80% | 79% | 77% | 75% | 69% | 65% | 72% | 80% | 89% | 91% | 100% | | | | | | |
| 21 | 85% | 84% | 84% | 83% | 81% | 79% | 76% | 72% | 80% | 89% | 91% | 100% | | | | | | | |
| 22 | 88% | 88% | 87% | 87% | 86% | 84% | 81% | 77% | 83% | 91% | 100% | | | | | | | | |
| 23 | 92% | 92% | 92% | 91% | 90% | 89% | 87% | 84% | 91% | 100% | | | | | | | | | |
| 24 | 96% | 96% | 96% | 95% | 95% | 94% | 93% | 91% | 100% | | | | | | | | | | |
| 25 | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | | | | | | | | | | | |

# SECTION 4: GENERAL PROVISIONS

**EFFECT OF WAIVER OF PREMIUM ON CASH VALUE BENEFITS**

Premiums waived under any Waiver of Premium Provision of the policy will be treated both as premiums paid and claims incurred for the purposes of calculating benefits under this rider.

**CHANGE IN PREMIUM**

If the premium for the policy or any rider changes for any reason, you will be notified of the revised premium. We will calculate your benefit based on both the original premium paid and the revised premium paid.

**TERMINATION AND REINSTATEMENT**

If you allow the policy to terminate and it is later reinstated, then all Maturity Dates will be deferred by the period of time that the policy was inactive.

EXCEPTION: If a Maturity Date occurs on the rider anniversary date after you reach age 75, we will not defer that Maturity Date.

FORM CV-CH-TN-A

**CONTINUATION PRIVILEGE**

If this is a family policy and you die, your spouse may elect to continue the insurance under the policy and this rider by paying the premium. All Maturity Dates will continue to be based on your age. The benefits will be paid to your spouse.

**BENEFIT ASSIGNMENT NOT ALLOWED**

You may not assign the benefits under this rider.

**CONTRACT**

This rider is part of the policy, and will terminate when the policy terminates, or when premiums are no longer paid for this rider, if earlier.

This rider is subject to all of the terms of the policy to which it is attached, unless any such terms are inconsistent with the terms of this rider.

Capitol American Life Insurance Company

*David H. Gunning*

David H. Gunning
President

**CONTINUATION PRIVILEGE**

If this is a family policy and you die, your spouse may elect to continue the insurance under the policy and this rider by paying the premium. All Maturity Dates will continue to be based on your age. The benefits will be paid to your spouse.

**BENEFIT ASSIGNMENT NOT ALLOWED**

You may not assign the benefits under this rider.

**CONTRACT**

This rider is part of the policy, and will terminate when the policy terminates, or when premiums are no longer paid for this rider, if earlier.

This rider is subject to all of the terms of the policy to which it is attached, unless any such terms are inconsistent with the terms of this rider.

Capitol American Life Insurance Company

David H. Gunning
President

**Application t** ▮▮▮▮▮ **e Insurance Company**    Executive Office: 1001 Lakeside Avenue, ~.eland, Ohio 44114-1195

| Applicant's Name (P▮▮) ▮▮▮▮▮ **248655-8** | | | ☒ Male ☐ Female | Date of Birth | Age | Social Security Number |
|---|---|---|---|---|---|---|
| *Bill R. Jones* | | | | | 36 C | |
| Spouse's Name (If Family Coverage) | | | ☐ Male ☐ Female | Date of Birth | Age | Phone Number (423) 474-2816 |

| Applicant's Address | Number and Street *P45 Box 850* | City *Elizabethton* | County *Carter* | State *TN* | Zip Code *37643* |
|---|---|---|---|---|---|

Children's Name(s) (Must Meet Policy Definition Requirements)

Employer's Name or Group/Association Name (If Payroll Deduction) *Carter Co. Board of Education* | Section *Range Elem School* | Department Number | Occupation *Teacher*

Please indicate below the type(s) of insurance applied for and answer all applicable questions. If you answer "yes" to any of the health questions, the person(s) named in the section(s) will be partially or completely excluded from insurance by an Exclusion Rider to be signed by the applicant before we issue the policy.

Has anyone to be insured under this policy ever been treated for or diagnosed as having:

| | | | |
|---|---|---|---|
| ☒ Cancer | • cancer in any form? | ☐ Yes | ☒ No |
| | If "yes," indicate the type of cancer, name(s) of person(s) and complete back of application. | | |
| | ☐ non-melanoma skin cancer. Name(s) of person(s): _____ | | |
| | ☐ any melanoma cancer. Name(s) of person(s): _____ | | |
| | ☐ non-melanoma internal cancer. Name(s) of person(s): _____ | | |
| | • a pre-leukemic condition, a pre-malignant condition or a condition with malignant potential within the last 10 years? | ☐ Yes | ☒ No |
| | If "yes," indicate name(s) of person(s) and complete back of application: | | |
| ☐ Intensive Care | • a heart attack, heart trouble or any abnormality of the heart? | ☐ Yes | ☒ No |
| | If "yes," indicate name(s) of person(s) and complete back of application: _____ | | |
| ☐ Specified Disease | • any of the following diseases: diphtheria, encephalitis, legionnaire's disease, meningitis, multiple sclerosis, muscular dystrophy, osteomyelitis, poliomyelitis, rabies, scarlet fever, sickle cell anemia, tetanus, toxic shock syndrome, tuberculosis, tularemia, or typhoid fever? | ☐ Yes | ☐ No |
| | If "yes" to any of the above, indicate name(s) of person(s) and disease(s) and complete back of application: | | |
| ☒ All Insurances | • Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)? | ☐ Yes | ☒ No |
| | If "yes," indicate name(s) of person(s) and complete back of application: | | |

| Type(s) of Insurance | | | Mode of Payment | | Premium Total | |
|---|---|---|---|---|---|---|
| **Cancer (CH)** | **Intensive Care Policy** | **Specified Disease** | ☒ Payroll Deduction | ☐ Monthly ☒ *10/pd* | Cancer | $ _____ |
| ☒ Individual ☐ Single Parent ☐ Family | ☒ Individual ☐ Family | ☐ First Occurrence Accumulator | | | Intensive Care | $ _____ |
| | **Base** ☐ $300 ☐ $50 | ☐ Individual ☐ Family | ☐ Employee/ Non-Payroll Association | ☐ A/C ☐ Semi-Annual | Specified Disease | $ _____ |
| ☐ Choice A  ☐ Choice C ☐ Choice B: ☐ Option 2 ☐ Option 3  ☐ Option 1 ☐ Choice U | **Added Benefits** ☐ 100/50 ☐ 100/100 ☐ 200/100 | ☐ Benefit Builder | ☐ Cash Value ☐ Direct | ☐ Annual | Total | $ 26.04 |
| ☐ Option 1 ☐ Option 2 ☐ Option 3 | ☐ _____ | ☐ _____ | | | Amount Collected | $ 31.36 HO |

Do you give Capital American Life Insurance Company permission to show your name only for marketing purposes?   ☒ Yes ☐ No   |  Special Instructions
Section 125 Plan   ☐ Yes ☒ No

Applicant's Statement: I have read, or have had read to me, the completed application; the above representations are true to the best of my knowledge and belief. I understand that:
• any false statements or misrepresentations in this application may result in loss of insurance;
• the agent has no authority to approve the application, change the policy or waive any policy provisions;
• no insurance will be effective until the date stated in my policy and until all eligibility requirements are met; and,
• (for ages 65 and above) I have received the booklet containing insurance advice for people eligible for Medicare.

Date: *9-26-96*   Signature of Applicant (X) *Bill R. Jones*   Signed by: *Watauga, Tn* ___ City, State

This Section to be Completed by Agent: I hereby certify that I have explained to the applicant all exceptions and limitations pertaining to the insurance applied for, including any concerning pre-existing conditions. I hereby certify that I have truthfully and accurately recorded in this application the information supplied by the applicant. I further certify that I am a licensed agent in the state where this application is being signed by the applicant.

Date: *9-26-96*   Signature of Agent: *James T Owens*   Agent Number: *51358*   Agency: *SCFO*

Form CHODQ/AAH N ASI                                                                 (5/96)

## CAPITOL AMERICAN LIFE

1001 LAKESIDE AVE • CLEVELAND, OHIO • 44114–1195
### COVERAGE IDENTIFICATION CARD

INSURED: **BILL R JONES**
**RT 5 BOX 850**
**ELIZABETHTON , TN  37643**

ACCOUNT NUMBER: **1  2468655**
PLEASE INCLUDE YOUR ACCOUNT NUMBER ON ALL CORRESPONDENCE

Signature: _____

COVERAGE CODE:

## CAPITOL AMERICAN LIFE

1001 LAKESIDE AVE • CLEVELAND, OHIO • 44114–11:
### COVERAGE IDENTIFICATION CARD

INSURED: **BILL R JONES**
**RT 5 BOX 850**
**ELIZABETHTON , TN  37643**

ACCOUNT NUMBER: **1  2468655**
PLEASE INCLUDE YOUR ACCOUNT NUMBER ON ALL CORRESPONDEN:

Signature: _____

COVERAGE CODE:

Service of Process
Dept. of Commerce & Insurance
500 James Robertson Pkwy.-7th Floor
Nashville TN 37243

**CERTIFIED MAIL™**



7012 3460 0002 8947 9927

FIRST CLASS

UNITED STATES POSTAGE
$ 09.66
02 1M
0004292626    MAR 06 2015
MAILED FROM ZIP CODE 37243

7012 3460 0002 8944 9927        03/03/2015
WASHINGTON NATIONAL INSURANCE COMPAI
2908 POSTON AVENUE, % CORP. SVC. COMPA
NASHVILLE, TN 37203

IN THE CIRCUIT COURT FOR CARTER COUNTY
AT ELIZABETHTON, TENNESSEE

| | | |
|---|---|---|
| BILL JONES, | ) | CASE NO. C13483 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON NATIONAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE TO COURT AND TO PLAINTIFF'S COUNSEL OF REMOVAL TO FEDERAL COURT

Pursuant to 28 USC §§1332, 1441 and 1446, Defendant Washington National Insurance Company filed a Notice of Removal in the United States District Court for the Eastern District of Tennessee, Greeneville Division on March 31, 2015. A true copy of that Notice of Removal is attached to this notice as Exhibit 1.

The filing of this Notice effects removal of this case, and, pursuant to 28 USC §1446(d), "the State court shall proceed no further unless and until the case is remanded."

Dated this **31**st day of **March**, 2015.

WASHINGTON NATIONAL
INSURANCE COMPANY

By: _____

Leslie Tentler Ridings
TN BPR No. 019621
**HUNTER, SMITH & DAVIS, LLP**
Post Office Box 3740
1212 North Eastman Road
Kingsport, TN 37664-0740
(423) 378-8800

**CERTIFICATE OF SERVICE**

I certify that the foregoing was served by placing a copy of same in the United States mail, first class postage prepaid this 31st day of March, 2015, addressed to the following:

Kristi Norris Johnson
714 First Street
Elizabethton, TN 37643

By: _____
Leslie Tentler Ridings